1  TOBEROFF & ASSOCIATES, P.C.
   Marc Toberoff (State Bar No. 188547)
2   *mtoberoff@ipwla.com*
   Pablo D. Arredondo (State Bar No. 241142)
3   *parredondo@ipwla.com*
   22337 Pacific Coast Highway #348
4  Malibu, California, 90265
   Telephone:   (310) 246-3333
5  Facsimile:   (310) 246-3101

6  Attorneys for Defendants,
   *Raenee Robinson, Ray Charles Robinson,*
7  *Jr., Sheila Robinson, David Robinson,*
   *Robert F. Robinson, Reatha Butler, and*
8  *Robyn Moffett*

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11

12  THE RAY CHARLES                    Case No: 12-CV-02725 ABC (FFMx)
    FOUNDATION, a California
13  Corporation,                       Hon. Audrey B. Collins

14                  Plaintiff,         **NOTICE OF MOTION AND**
                                       **MOTION TO STRIKE**
15          vs.                        **PLAINTIFF'S STATE-LAW**
                                       **CAUSES OF ACTION PURSUANT**
16  RAENEE ROBINSON, an individual;    **TO CALIFORNIA'S ANTI-SLAPP**
    RAY CHARLES ROBINSON, JR. an       **LAW (CAL. CODE CIV. PROC.**
17  individual; SHEILA ROBINSON, an    **§425.16); MEMOMRANDUM OF**
    individual; DAVID ROBINSON, an     **POINTS AND AUTHORITIES**
18  individual; ROBERT F. ROBINSON,
    an individual; REATHA BUTLER,
19  an individual; and ROBYN           Complaint Filed:  March 29, 2012
    MOFFET, an individual,
20                                     Date:   September 24, 2012
                    Defendants.        Time:  10:00 a.m.
21

22

23

24

25

26

27

28

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE THAT** on September 24, 2012, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Audrey B. Collins, located in the United States Courthouse, 255 E. Temple St., Los Angeles, California, 90012, Defendants Raenee Robison, Ray Charles Robinson, Jr., Sheila Robinson, David Robinson, Robert F. Robinson, Raetha Butler, and Robyn Moffet ("Defendants") will and hereby do move this Court to strike Plaintiff's Second and Third Causes of Action pursuant to California's anti-SLAPP statute, Code of Civil Procedure § 425.16.

This motion to strike is made upon the following grounds: the Second and Third Causes of Action arise from conduct protected by California Code of Civil Procedure § 425.16 because they concern (i) statements or writings made before a legislative, executive, or judicial or other official proceeding (Cal. Code Civ. Proc. § 425.16(e)(1), (ii) written or oral statements and writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body (Cal. Code Civ. Proc. § 425.16(e)(2)), and (iii) exercise of petition and free speech rights in connection with a public issue (Cal. Code Civ. Proc. § 425.16(e)(4)).

The Plaintiff cannot show a reasonable likelihood of success on its Second Claim for Relief, for breach of contract, because (i) the plain language of the Statements signed by Defendants precludes them only from making claims against their father's estate, and Defendants' exercise of their termination rights under the Copyright Act regarding copyright grants to third parties are not claims against the estate; and (ii) the Statements cannot be read to waive, limit or otherwise encumber Defendants' termination rights under the Copyright Act because the right of an author's children to recapture his copyrights by statutory termination of prior copyright grants is inalienable.

The Plaintiff cannot show a reasonable likelihood of success on its Third

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
STATE-LAW CAUSES OF ACTION

1  Claim for Relief, for breach of the implied covenant of good faith and fair
2  dealing, because this implied covenant (i) cannot be expanded to impose
3  additional obligations never contemplated by the parties; and (ii) cannot be used
4  to achieve a result not permitted in an express contract.

5          Pursuant to Cal. Code Civ. Proc. § 425.16(c)(1), and *United States ex rel.*
6  *Newsham v. Lockheed Missile & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999),
7  Defendants request an order awarding Defendants their attorney's fees and costs
8  incurred in defending against Plaintiff's Second and Third Claims, subject to
9  proof of such fees being submitted after proceedings on such motion are
10 concluded.

11         This Motion is made following the conference of counsel pursuant to L.R.
12 7-3, which took place on June 22, 2012.

13         This Motion is based on this Notice of Motion, the attached Memorandum
14 of Points and Authorities, all of the pleadings, files, and records in this
15 proceeding, all other matters of which the Court may take judicial notice, and
16 any argument or evidence that may be presented to or considered by the Court
17 prior to its ruling.

18

19     Dated:  July 3, 2012               TOBEROFF & ASSOCIATES, P.C.
20                                         By:      /s/ Marc Toberoff
                                             Marc Toberoff
21                                         Attorneys for Defendants Raenee
22                                         Robinson, Ray Charles Robinson, Jr.,
                                           Sheila Robinson, David Robinson, Robert
23                                         F. Robinson, Reatha Butler, and Robyn
                                           Moffett
24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
STATE-LAW CAUSES OF ACTION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ............................................................................... 2

ARGUMENT ....................................................................................................... 3

I.  THE TERMINATION RIGHT UNDER THE U.S. COPYRIGHT ACT .. 3

    A.  Recapture Rights Under The Copyright Acts of 1790 and 1831 ...... 4

    B.  Recapture Rights Under The 1909 Copyright Act ........................... 5

    C.  The Inalienable Termination Rights Under
       The 1976 Copyright Act .................................................................. 5

II.  PLAINTIFF'S SECOND AND THIRD CLAIMS SHOULD BE
    STRUCK UNDER CALIFORNIA'S ANTI-SLAPP LAW ...................... 7

    A.  California Anti-SLAPP Statute ........................................................ 7

    B.  Plaintiff's Second And Third Claims "Arise" From Protected
       Activity ............................................................................................ 8

    C.  Plaintiff Cannot Show A Reasonable Probability of Succeeding
       On Its Second And Third Claims Which Fail To State Legally
       Cognizable Causes Of Actions ...................................................... 10

    D.  Defendants Are Entitled To Their Legal Fees And Costs ............. 15

CONCLUSION .................................................................................................. 16

CERTIFICATE OF SERVICE ......................................................................... 17

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Batzel v. Smith,*
333 F.3d 1080 (9th Cir. 2003) ...................................................... 7, 10

*Briggs v. Eden Council for Hope & Opportunity,*
19 Cal. 4th 1106 (1999) ............................................................... 8, 9

*Classic Media v. Mewborn*
532 F.3d 978 (9th Cir. 2008) ................................................. 6, 11, 12

*ComputerXpress, v. Jackson,*
93 Cal. App. 4th 993 (2001) ............................................................. 8

*De Sylva v. Ballantine,*
351 U.S. 570 (1956) ......................................................................... 4

*Dixon v. Superior Court,*
30 Cal. App. 4th 733 (1994) ............................................................ 7

*Fred Fisher Music Co. v. M. Witmark & Sons,*
318 U.S. 643 (1943) ...................................................................... 5, 6

*Greenberg v. Nat'l Geographic Soc'y,*
533 F.3d 1244 (11th Cir. 2008) ........................................................ 5

*Hilton v. Harllmark Cards,*
580 F.3d 874 (9th Cir. 2009) ........................................................... 8

*Kearney v. Foley & Lardner,*
553 F. Supp. 2d 1178 (S.D. Cal. 2008) ........................................... 15

*Ketchum v. Moses,*
24 Ca 4th 1122 (2001) ................................................................... 15

*Ludwig v. Superior Court,*
37 Cal. App. 4th 8 (1995) ................................................................ 7

*Martinez v. Metabolife Int'l, Inc.,*
113 Cal. App. 4th 181 (2003) ........................................................ 8, 9

*Marvel Characters, Inc. v. Simon*,
310 F.3d 280 (2d Cir. 2002) ....................................................... 6, 11

*Mindys Cosmetics, Inc. v. Dakar*,
611 F.3d 590 (9th Cir. 2010) ........................................................ 8, 9

*N.Y. Times v. Tasini*,
533 U.S. 483 (2001) .......................................................................... 6

*Neville v. Chudacoff*,
160 Cal. App. 4th 1255 (2008) ....................................................... 7, 8

*Plumley v. Mockett*,
164 Cal. App. 4th 1031 (2008) ........................................................... 9

*Powertech Tech., Inc. v. Tessera, Inc.*,
2012 WL 1835699 (N.D. Cal. May 21, 2012) ................................... 9

*Racine & Laramie, Ltd. v. Dep't of Parks and Recreation*,
11 Cal. App. 4th 1026 (1992) ........................................................... 12

*Saroyan v. William Saroyan Foundation*,
675 F. Supp. 843 (S.D.N.Y. 1987) ................................................... 14

*Seltzer v. Barnes*,
182 Cal. App. 4th 953 (2010) ............................................................. 8

*Siegel v. Warner Bros. Entertainment*,
542 F. Supp. 2d 1098 (C.D. Cal. 2008) ............................................. 9

*Spier, Inc. v. Bourne Company*,
953 F.2d 774 (2nd Cir. 1992) .................................................... 13, 14

*Stewart v. Abend*,
495 U.S. 207 (1990) .............................................................. 4, 5, 6, 11

*United States v. Lockheed Missiles & Space Co.*,
190 F.3d 963 (9th Cir. 1999). ........................................................... 7

MOTION TO STRIKE PLAINTIFF'S STATE-LAW CAUSES OF ACTION

## Statutes

Cal. Civ. Proc. Code § 425.16 (e) ............................................................... passim

17 U.S.C. § 304(c) ...................................................................................... passim

17 U.S.C. § 203(a) ...................................................................................... passim

17 U.S.C. § 24 ...................................................................................................5

28 U.S.C. § 2201(a) .........................................................................................3

1 Stat. 124 ........................................................................................................4

## Legislative History

H.R. Rep. No. 2222, 60th Congress, 2d Sess. (1909)...........................................4

H.R. Rep. No. 94-1476 at 140 (1990),
*reprinted in* 1976 U.S.C.C.A.N. at 5756 .......................................................5,13

## Secondary Sources

Peter S. Menell & David Nimmer, *Judicial Resistance to Copyright Law's
Inalienable Right to Terminate Transfers*,
33 Colum. J.L. & Arts 227, 237 (2010) .............................................................14

Lee-ford Tritt, *Liberating Estate Laws from the Constraints of Copyright*,
38 Rutgers L.J. 109, 166 (2006) ........................................................................14

3-9 M. Nimmer & D. Nimmer,  Nimmer On Copyright, §9.02 ........................3, 4

# **INTRODUCTION**

Plaintiff asserts in its Second and Third Claims that defendants Raenee Robinson, Ray Charles Robinson, Jr., Sheila Robinson, David Robinson, Robert F. Robinson, Reatha Butler, and Robyn Moffett, the majority of Ray Charles Robinson's children ("Defendants"), breached an alleged contract and an implied covenant of good faith and fair dealing by filing and serving notices of termination of copyright transfers to third parties, pursuant to the Copyright Act, 17 U.S.C. §§ 304(c) and 203(a).  The alleged contract is a short "Statement" signed by each child which purports to "waiv[e] any right to make a claim against [their father's] estate."  Though the Statements are facially irrelevant to Defendants' inalienable termination rights under the Copyright Act, Plaintiff's state-law claims seek to punish Defendants for exercising these federally mandated rights.  Tellingly, Warner/Chappell Music, the third party successor to the copyright grants terminated by Defendants, does not challenge Defendants' statutory termination notices.

As shown below, Defendants' filing with the U.S. Copyright Office of termination notices pursuant to the Copyright Act constitutes petition activity protected by California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16(e).  Accordingly, Plaintiff bears the burden of demonstrating a reasonable probability that it will prevail on its state-law claims, or such claims must be struck under the anti-SLAPP law.  Plaintiff cannot meet this burden as a matter of law because (1) Defendants' statutory notices of termination of third party grants are not "a claim against [their father's] estate;" (2) the Statements do not contemplate and are irrelevant to termination rights; and (3) the Statements could not, in any event, waive, transfer or encumber Defendants' termination rights which are un-waivable under the Copyright Act and settled precedent.  Therefore, the Court should strike Plaintiff's Second and Third Claims and award Defendants' their attorney's fees and costs pursuant to the statute.

## **FACTUAL BACKGROUND**

The facts surrounding Plaintiff's state-law claims are straightforward.  On March 30, 2010, Defendants, who constitute the requisite majority of the children and statutory heirs of Ray Charles Robinson ("Charles"), exercised their inalienable right under sections 304(c) and 203(a) of the Copyright Act to regain ownership of the copyrights to certain of their father's venerated musical compositions (the "Compositions") by terminating prior transfers of copyright to third party music publishers.  *See* Dkt. 1 ("Complaint") ¶ 34; 17 U.S.C. §§ 304(c) and 203(a).  Defendants and their copyright counsel went to great lengths to comply with the procedures set forth in sections 304(c) and 203(a) of the Copyright Act and in 37 C.F.R. § 201.10, the regulations promulgated thereunder, serving thirty-nine copyright termination notices (the "Termination Notices") on the grantees and/or successor grantees which owned the Compositions.  *See* Complaint ¶¶ 34, 36.  Pursuant to the termination "window" proscribed by 7 U.S.C. § 304(c)(4)(a), the earliest effective termination date as to certain of the Compositions was on April 1, 2012 and the latest is on September 28, 2012.  *Id.* ¶ 35.

None of the relevant grantees or their successor, Warner/Chappell Music, Inc., who were all duly served with the Termination Notices in early 2010, have challenged their validity or scope.  *Id.* ¶ 34.  As Charles did not own any of the Compositions at his death and Plaintiff was never granted any of the Compositions in question, Plaintiff was not served with the Termination Notices.

In 2002, eight years prior to exercising their statutory termination rights, each of Charles' children, including Defendants, had signed identical short statements (the "Statement(s)") acknowledging that their father would provide them with $500,000 each in an irrevocable trust, and agreeing not to bring any claims against his estate. *Id.* ¶¶ 31-32. The entirety of these Statements, incorporated by reference in Plaintiff's Complaint (¶¶ 31-32), read as follows:

MOTION TO STRIKE PLAINTIFF'S STATE-LAW CAUSES OF ACTION

**STATEMENT**

My father, Ray Charles Robinson, has told me that he will set up an irrevocable trust for my benefit, to be funded with $500,000. This gift is my entire inheritance from him and I understand that I will not inherit anything further under my father's estate plan and that I am waiving any right to make a claim against his estate.

This Statement has been read and understood this *14* day of December, 2002.

_____

*See* Declaration of Pablo Arredondo, Ex. A. To date, Defendants have complied fully with this Statement: they have brought no claims against their father's estate, and the estate closed long ago. The Statements are completely silent on termination rights, and, in any event, could not circumvent, waive or deprive Defendants of their inalienable termination rights as a matter of copyright law, as more fully discussed below. 17 U.S.C. §§ 203(a)(5), 304(c)(5).

Two years after Defendants served their Termination Notices, Plaintiff filed the present Complaint. Plaintiff's First Claim is for declaratory relief under 28 U.S.C. § 2201(a) and challenges the validity and scope of the terminations. Complaint ¶¶ 41-47. Plaintiff's Second Claim (*Id.* ¶¶ 48-51) alleges that Defendants' exercise of their statutory termination rights constituted a breach of their respective Statements, and its Third Claim (*Id.* ¶¶ 52-55) alleges that their Termination Notices breached the implied covenant of good faith and fair dealing. The Complaint makes plain that the "gravamen" of Plaintiff's two state-law claims is Defendants' exercise of their statutory termination rights.

//

//

//

MOTION TO STRIKE PLAINTIFF'S STATE-LAW CAUSES OF ACTION

# ARGUMENT

## I. THE COPYRIGHT ACT'S INALIENABLE TERMINATION RIGHT

For over two centuries, the United States Copyright Act has consistently provided authors and their families with the right to recover previously transferred copyright interests. *See Stewart v. Abend*, 495 U.S. 207, 219 (1990); 3-9 M. Nimmer & D. Nimmer, *Nimmer On Copyright* (hereinafter, "*Nimmer On Copyright*"), § 9.02. These protections culminated in the current Copyright Act's termination provisions. 17 U.S.C. §§ 203(a), 304(c)-(d). To ensure maximum protection, Congress specifically provided that neither authors, nor their spouse or children can waive or relinquish their termination rights or contract around them. *Id*. The legislative purpose of the current termination provisions are best understood by reviewing the predecessor reversionary renewal provisions under the Copyright Act.

### A. Recapture Rights Under The Copyright Acts Of 1790 And 1831

The initial copyright statute, the Copyright Act of 1790, provided two separate copyright terms, an initial and renewal term of 14 years each. *See* 1 Stat. 124; *Stewart*, 495 U.S. at 217. Authors and their families were permitted during a copyright's renewal term to recapture copyrights assigned away during their initial term. *Id*. In the Copyright Act of 1831, Congress strengthened this renewal/recapture right. *Id*., 4 Stat. 436. The 1831 Act also prohibited authors from assigning away their spouse's or children's renewal rights. *Id*. "The evident purpose of the [renewal term] is *to provide for the family of the author after his death*." *Stewart*, 495 U.S. at 217 (emphasis added), quoting *De Sylva v. Ballantine*, 351 U.S. 570, 582, (1956). The renewal term was intended as a new grant reverting to the author or his family at the end of the initial term, so as to enable them to participate in the increased value of their copyrights. *See Stewart*, 495 U.S. at 217-220; *Nimmer On Copyright*, § 9.02.

## B.     Recapture Rights Under The 1909 Copyright Act

The Copyright Act of 1909 continued this renewal system and increased both the initial and renewal terms from 14 to 28 years.  See 17 U.S.C. § 24; H.R. Rep. No. 2222, 60th Congress, 2d Sess., at 14 (1909).  However, some publishers used their superior bargaining position to force authors, as well as their spouses and children, to assign away their renewal rights before such rights vested.  This practice of "contracting around" the renewal rights was controversial until *Fred Fisher Music Co. v. M. Witmark & Sons*, 318 U.S. 643, 657-59 (1943) held that the renewal expectancy could be assigned during the initial copyright term.  Thereafter, publishers routinely insisted that authors/heirs assign both terms, thereby curtailing their future participation and eliminating the intended benefits of the renewal scheme.  *See Stewart*, 495 U.S. at 219.

## C.     The Inalienable Termination Rights Under The 1976 Copyright Act

On January 1, 1978, the Copyright Act of 1976 (the "1976 Act") went into effect, and with it major changes to U.S. copyright law that significantly enhanced the rights of authors and their families.  17 U.S.C. § 101 et seq. (1978).  *See Greenberg v. Nat'l Geographic Soc'y*, 533 F.3d 1244, 1259 n.1 (11th Cir. 2008) ("The 1976 Copyright Act was supposed to reverse two hundred years of publishers' exploitation of authors under the [] Copyright Act.").  When Congress extended the renewal term from 28 to 47 years in § 304(a) of the 1976 Act, it intended to benefit authors rather than prior grantees, for whom the automatic grant of the extended term would be an unjustified windfall.  *See* H.R. Rep. No. 94-1476 at 140 (1990), *reprinted in* 1976 U.S.C.C.A.N. at 5756.  To that end, Congress coupled the term extension with a new right of authors and their statutory heirs (principally spouse, *children* and grandchildren) to terminate transfers of rights in a copyright's renewal term executed before January 1, 1978.  17 U.S.C. § 304(c).

A closely related termination provision in the 1976 Copyright Act governs works copyrighted after January 1, 1978 and allows the author or his statutory heirs to terminate any copyright grant by the author, 35 years after such grant. *See* 17 U.S.C. § 203(a).  When Congress further extended the copyright renewal term of pre-January 1, 1978 works in the Sony Bonno Copyright Term Extension Act of 1998 (11 Stat. 2827), it coupled this extension with a third termination right.  *Id*., § 304(d).

In recognizing the concerted legislative intent of the 1976 Act's termination provisions, the Supreme Court has emphasized the "inalienable" right of authors and their families "to revoke a copyright transfer."  *N.Y. Times v. Tasini*, 533 U.S. 483, 496 (2001).  *See also Stewart*, 495 U.S. at 230 ("[1976 Act] provides an inalienable termination right"); *Marvel Characters, Inc. v. Simon* ("*Simon*"), 310 F.3d 280 (2d Cir. 2002) (Marvel cannot bar the termination right by contractually re-characterizing works as un-terminable "work for hire," after the fact).

The inalienable termination right lies in stark contrast to ordinary contract principles, as it empowers authors and their statutory heirs to terminate grants of copyright without cause, regardless of the contracting parties' promises, intent or expectations when the grant was made.  17 U.S.C. § 304(c)(5).  Congress created this vital right to directly address the inequities caused by *Fred Fisher*, and "to assure that [the 1976 Act's] new benefits would be for the authors and their [statutory] heirs."  *Classic Media v. Mewborn*, 532 F.3d 978, 984 (9th Cir. 2008); *see also Simon*, 310 F.3d at 290-91. Thus, in further abrogation of "freedom of contract" principles, ***the termination right cannot be waived or circumvented***:  "[t]ermination of the grant may be effected notwithstanding any agreement to the contrary;" and "[a] further grant…of any right covered by a terminated grant is valid only if it is made after the effective date of termination … [or as to] the original grantee or such grantee's successor in title, after the

MOTION TO STRIKE PLAINTIFF'S STATE-LAW CAUSES OF ACTION

1  notice of termination has been served….”  17 U.S.C. § 304(c)(5)-(6)(B); §

2  203(a)(1) – (5).

3  **II.   PLAINTIFF'S SECOND AND THIRD CLAIMS SHOULD BE**

4  **STRUCK UNDER CALIFORNIA'S ANTI-SLAPP LAW**

5      **A.    California Anti-SLAPP Statute**

6      California's anti-SLAPP law, Cal. Code of Civil Procedure (“CCP”) §

7  425.16, provides substantive immunity from suit for claims that interfere with

8  the exercise of speech and petition rights, including the right to communicate

9  with government offices or with private parties in contemplation or furtherance

10 of litigation.  *See Ludwig v. Superior Court*, 37 Cal. App. 4th 8, 14 (1995);

11 *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1268-69 (2008).  It is a remedy

12 designed to quickly dispose of “lawsuits brought primarily to chill the valid

13 exercise of constitutional rights of freedom of speech and petition for redress of

14 grievances.”  CCP § 425.16(a); *Dixon v. Superior Court*, 30 Cal. App. 4th 733,

15 741 (1994).  “The hallmark of a [SLAPP claim] is that it lacks merit and is

16 brought with the goals of obtaining an economic advantage over a citizen party

17 by increasing the cost of litigation . . . and of deterring future litigation.”  *United*

18 *States v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970-71 (9th Cir. 1999).

19 The anti-SLAPP law applies to California state-law claims filed in federal court,

20 such as Plaintiff's Second and Third Claims.  *Batzel v. Smith*, 333 F.3d 1080,

21 1025-26 (9th Cir. 2003) (“Because California law recognizes the protection of

22 the anti-SLAPP statute as a substantive immunity from suit, this court . . . will

23 do so as well.”).

24     An anti-SLAPP motion to strike involves a two-step process.  *First*, a

25 defendant is required to make a prima facie showing that the plaintiff's suit

26 arises from activity that is protected under the anti-SLAPP law. *Second*, “[t]he

27 burden then shifts to the plaintiff to establish a reasonable probability that the

28 plaintiff will prevail on his or her [] claim.”  *Batzel*, 333 F.3d at 1024.  As to the

first prong, "it is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies." *Martinez v. Metabolife Int'l, Inc.,* 113 Cal. App. 4th 181, 188 (2003).  However, even if a cause of action concerns activity that is not protected under § 425.16, the cause of action will still be subject to the anti-SLAPP law so long as the protected activity is not "merely incidental."  *Seltzer v. Barnes*, 182 Cal. App. 4th 953, 962-63 (2010).  *See Neville*, 160 Cal. App. 4th at 1261-62.

In applying this two-step process, courts must heed the California Legislature's and the Ninth Circuit's admonition that the anti-SLAPP statute is to be "construed broadly."  *Hilton v. Harllmark Cards*, 580 F.3d 874, 882-83 (9th Cir. 2009).

**B.    Plaintiff's Second and Third Claims "Arise" From Protected Activity**

"The constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action."  *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1115 (1999).  To protect this conduct, the anti-SLAPP statute explicitly applies to, among other things, "any written or oral statement or writing" made "before" or "in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other official proceeding."  Cal. Civ. Proc. Code § 425.16(e)(1)-(2).  The courts have routinely construed this language to cover "communications to official administrative agencies."  *See ComputerXpress, v. Jackson*, 93 Cal. App. 4th 993, 1009 (2001).

Most importantly for this case, the Ninth Circuit has specifically held that "an attempt to establish a property right under a comprehensive federal statutory scheme" constitutes petition activity protected by the anti-SLAPP law.  *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 597 (9th Cir. 2010) (holding that an application with the U.S. trademark office is protected under both § 425.16(e)(1)

and (2)).  *See also Plumley v. Mockett*, 164 Cal. App. 4th 1031 (2008) (granting Anti-SLAPP motion to strike claims against attorney for filing with the U.S. patent office); *Briggs*, 19 Cal. 4th at 1109-10 (granting anti-SLAPP motion where lawsuit was based on filing with a government agency).

Here, Defendants served their statutory Termination Notices on various third parties and filed these notices with the U.S. Copyright Office as required by 17 U.S.C. 304(c)(4) and 203(a)(4) in order  "to establish a property right" to the Compositions under the Copyright Act's comprehensive termination scheme. This clearly constitutes protected activity under both CCP § 425.16(e)(1) and (2).  *See Mindys Cosmetics, Inc.*, 611 F.3d at 597; *see also Siegel v. Warner Bros. Entertainment*, 542 F. Supp. 2d 1098, 1101 (C.D. Cal. 2008) ("The termination provisions in the Copyright Act of 1976 have aptly been characterized as formalistic and complex. . .") (citation omitted).

It is precisely this protected conduct that Plaintiff seeks to punish with its Second and Third Claims.  According to Plaintiff, Defendants breached both their alleged contracts (the Statements) and the implied covenant of good faith and fair dealing simply "[b]y serving numerous termination of transfer notices." Complaint ¶ 19; *see also* Complaint ¶ 20 (arguing that Defendants are liable for breach because of their "willful acts of serving the aforementioned copyright termination of transfer notices").  Defendants' statutory terminations, filed with the U.S. Copyright Office, are unquestionably the "gravamen" of Plaintiff's state-law claims.  *Martinez,* 113 Cal. App. 4th at 188.  Plaintiff does not allege, identify, or attempt to ground its Second and Third Claims in any other conduct. Such claims do not merely "arise" from activity that is protected under the anti-SLAPP statute; rather, they exclusively and directly target that activity.  *See Powertech Tech., Inc. v. Tessera, Inc.*, 2012 WL 1835699 *7 (N.D. Cal. May 21, 2012) (dismissing breach of contract and breach of covenant of good faith and dealing claims where "[b]ut for [defendant's] filing" with federal agency,

9

MOTION TO STRIKE PLAINTIFF'S STATE-LAW CAUSES OF ACTION

plaintiff "would have no basis for the claims").

C.     **Plaintiff Cannot Show A Reasonable Probability Of Succeeding On Its Second And Third Claims Which Fail To State Legally Cognizable Cause Of Actions**

As Plaintiff's Second and Third Claims both attack activity protected by the anti-SLAPP statute, Plaintiff has the burden of establishing by admissible evidence that it has a "reasonable probability" of prevailing on each claim. *Batzel*, 333 F.3d at 1024.  Plaintiff cannot make this showing because these causes of action fail as a matter of law to state a cognizable claim.

Plaintiff's entire theory of breach of contract is grounded in the notion that Defendants violated the terms of the Statement they each signed by serving and filing with the U.S. Copyright Office their Termination Notices pursuant to the Copyright Act, 17 U.S.C. §§ 304(c) and 203(a).  There is, however, no logical or legal connection between the Statements and the Termination Notices, and even if there were, the Statements could not legally waive, bar or encumber Defendants' Termination Notices as a matter of copyright law.

Under the express terms of the Statements, Defendants agreed to the following:

> My father, Ray Charles Robinson, has told me that he will set up an irrevocable trust for my benefit, to be funded with $500,000. This gift is my entire inheritance from him and I understand that I will not inherit anything further under my father's estate plan and that I am waiving any right to make a claim against his estate.

*See* Declaration of Pablo Arredondo, Ex. A.   The plain wording of the Statements purports only to prevent Defendants from "mak[ing] a claim against [their father's] estate."  Defendants have not done so.  Their father did not own the copyrights in question when the Statements were signed, his estate did not own them at the time of his passing, and Plaintiff does not own them now. Instead, the copyrights have, at all relevant times, been held by third parties, of which Warner/Chappell Music is the successor-in-interest.  When Defendants

served their Termination Notices, they therefore did not "make a claim against [their father's] estate"; rather they made a claim against third party copyright grantees by statutorily terminating their grants.

In addition, the "inalienable" termination right of an author's child is a federal statutory right – a creature of the Copyright Act – that exists independently of any "inherit[ance] . . . under [a] father's estate plan." *Id.* Stated another way, Defendants held termination rights under the Copyright Act with respect to their father's copyrights irrespective of their status under his "estate plan."

The Statements are entirely silent with respect to Defendants' termination rights and do not preclude them from exercising their statutory rights. Moreover, even if the Statements had purported to waive, transfer or release Defendants' termination rights, or even if that had been the parties' express intention, such provisions would be entirely unenforceable as a matter of law.

In enacting the termination right, Congress expressly sought to prevent its contractual erosion, as noted above. Therefore, in abrogation of standard freedom of contract principles, Congress made the termination right inalienable. *See Stewart*, 493 U.S. at 230 (noting the 1976 Act "provides an inalienable termination right"). Under the Copyright Act, termination of a prior copyright grant "may be effected *notwithstanding any agreement to the contrary*, including an agreement to make a will or to make a future grant." 17 U.S.C. § 304(c)(5) (emphasis added); § 203(a)(5) (same); *see Simon*, 310 F.3d at 290 (holding that an agreement characterizing a work as a non-terminable "work for hire" was unenforceable as "an agreement to the contrary" under the Copyright Act); *Classic Media*, 532 F.3d at 984-85 (explaining "the 1976 Copyright Act provides. . . an *inalienable* termination right") (citation omitted).

Accordingly, to the extent that Plaintiff reads the Statements to waive or otherwise limit Defendants' termination rights, the Statements would be null,

MOTION TO STRIKE PLAINTIFF'S STATE-LAW CAUSES OF ACTION

1    void and unenforceable under the Copyright Act.

2          Nor can the Statements be read as advance agreements to re-grant the

3    copyrights to Plaintiff, Warner/Chappell Music or anyone else.  To further

4    protect authors and their statutory heirs, Congress specified that copyrights

5    cannot be anticipatorily re-granted or transferred.  *See* 17 U.S.C. § 304(c)(6).

6    Rather, an author/heirs can re-grant a reverted copyright to a terminated grantee

7    or its successor only after a notice of termination has been served, and can

8    transfer the copyright to third parties only after the termination takes effect.  *Id.*;

9    *see also Classic Media*, 532 F.3d at 985 (explaining that "only once a copyright

10   grant is terminated and the right has reverted to an author or his statutory heirs

11   may the reverted copyright interest be effectively assigned").  Defendants could

12   not have legally agreed to transfer their reversionary copyright termination

13   interest when they signed the Statements in 2002 because that was eight years

14   prior to their service of notices of termination in 2010, and at least ten years

15   prior to the earliest effective date of any of those terminations in 2012.

16   Complaint ¶¶ 34, 35.  To the extent that the Statements are read by Plaintiff to

17   say otherwise, they are invalid.

18          Plaintiff's Third Claim fails for the same reasons as its Second Claim.

19   The implied covenant of good faith and fair dealing "is limited to assuring

20   compliance with the express terms of the contract, and cannot be extended to

21   create obligations not contemplated in the contract."  *Racine & Laramie, Ltd. v.*

22   *Dep't of Parks and Recreation*, 11 Cal. App. 4th 1026, 1032 (emphasis added).

23   As detailed above, the short Statements purported to preclude Defendants only

24   from making claims against their father's estate plan.  The Statements did not

25   mention or even hint at Defendants' termination rights with respect to copyrights

26   held by third parties.  Plaintiff's efforts to extend the Statements to encumber

27   rights that were never contemplated by the parties are improper and should be

28   rejected.

Furthermore, even if Defendants' termination rights were contemplated, an implied covenant to waive or encumber the exercise of those statutory rights would be no more enforceable than an explicit contract provision waiving such rights.  As discussed above, Congress went to great lengths to ensure that the termination right is inalienable.  It cannot be transferred, waived, or released, and explicitly can be exercised "notwithstanding any agreement to the contrary." 17 U.S.C. § 304(c)(5);   § 203(a)(5) (same).  Plaintiff cannot be permitted to achieve through the implied covenant what it could not achieve through an express contract.  Were it otherwise, the Copyright Act's termination provisions would be undermined and Congress' concerted objectives would be thwarted.

1.   Plaintiff's Reliance on Purported Testamentary Intent Is Unavailing

To avoid the strictures of the Copyright Act's termination provisions, Plaintiff dresses its arguments in purported concerns for Defendants' deceased father and his supposed wishes.  *See, e.g.*, Complaint ¶¶ 2, 5, 13 ("In defiance of the trust and confidence reposed in them by their father . . . Defendants served thirty-nine copyright termination notices on a whole host of entities.").  Factually, Plaintiff's narrative is questionable.  Legally, it is entirely irrelevant.

Moreover, the courts have held that the purpose of the federal termination right is not to effectuate an author's testamentary intent.  As the Second Circuit held in *Larry Spier, Inc. v. Bourne Co.*, 953 F.2d 774, 778 (2d Cir. 1992):

> "Whatever effect [a] termination might have upon [other's] rights under [a] testamentary grant is wholly incidental and secondary to the exercise of the express rights provided by the statute to those it is concerned with protecting. Section 304(c) is not necessarily a provision for the effectuation of the author's 'intent.' If the author's intent were the paramount concern of the statute, then no termination of any kind would be allowed, because most authors presumably "intend" to make the assignment that is the very object of Section 304(c)'s termination provisions. . . Granting supremacy to the author's intent as against the rights of the widow and children would obviate the reason that Section 304(c) is in the Copyright Act to begin with and distort the deliberate legislative choice made by Congress …"

MOTION TO STRIKE PLAINTIFF'S STATE-LAW CAUSES OF ACTION

1    Accordingly, "there is a limit on the weight that courts should attach to the

2  author's subjective desires," and the law should not be distorted or otherwise

3  bent to accommodate those desires.  *Id.*

4    *Saroyan v. William Saroyan Foundation*, 675 F. Supp. 843 (S.D.N.Y.

5  1987) is likewise on point.  In that case, an author willed $150,000 to his heirs

6  and left the rest of his estate, including "all copyrights [and] rights to copyright,"

7  to a charitable foundation in his name.  The renewal copyrights to the author's

8  works reverted to his children when they subsequently exercised their renewal

9  rights under § 304(a) of the Copyright Act.   The foundation challenged this,

10  arguing "the foundation's view of [the author's] testamentary intent, equitable

11  grounds, and legislative intent."  *Id.* at 843.  Pointing to the "plain language of

12  the statute" and the legislative history of the Copyright Act, the *Saroyan* Court

13  emphatically rejected the foundation's argument, ruling that as a matter of law

14  the renewal rights belonged to an "author's family, regardless of the author's

15  own wishes." *Id.* at 846.  The Court similarly rejected the foundation's argument

16  that its charitable purpose trumped the heirs' private interests. *Id.* at 844.

17    The same rationale and Congressional intent to benefit statutory heirs

18  applies to the termination right.  In fact, as discussed above, when Congress

19  extended the copyright *renewal* term in the 1976 Act it coupled that extension

20  with the right of an author's statutory heirs to recapture his/her copyrights and

21  thereby benefit from the extension.  *See* H. Rep. at 140; 17 U.S.C. §§ 304(c),

22  (d); *see also* Lee-ford Tritt*, Liberating Estate Laws from the Constraints of*

23  *Copyright*, 38 Rutgers L.J. 109, 166 (2006) ("Similar to renewal rights. . . the

24  author cannot strip members of the statutory class of heirs of termination rights

25  or alter the size of the interest that vests in any particular statutory heir."); Peter

26  S. Menell & David Nimmer, *Judicial Resistance to Copyright Law's Inalienable*

27  *Right to Terminate Transfers*, 33 Colum. J.L. & Arts 227, 237 (2010) ("Rather

28  than bequeath their copyright royalties by will to their surviving family

14

MOTION TO STRIKE PLAINTIFF'S STATE-LAW CAUSES OF ACTION

members, authors at times name in their will a favored charity, a mistress or a testamentary trust to act for the benefit of numerous interests.  Notwithstanding those testamentary dispositions, Congress vested the right to terminate transfers automatically in the author's statutory successors.").

For all of these reasons, Plaintiff cannot show a "reasonable probability" that it will succeed on their Second and Third Claims, which fail to state a cognizable cause of action.  As a matter of law, Defendants have not breached a contract with Plaintiff or the implied covenant of good faith and fair dealing by serving their statutory Termination Notices on third parties and filing them with the U.S. Copyright Office.  Accordingly, Plaintiff's state-law claims must be struck under California's anti-SLAPP statute.

### D.  Defendants Are Entitled to Their Legal Fees and Costs

Under California Code of Civil Procedure § 425.16 (c), a defendant who prevails on an anti-SLAPP motion to strike, "shall be entitled to recover his or her attorney's fees and costs."  This award is "mandatory."  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001) (internal citations and quotations omitted); *see also Kearney v. Foley & Lardner*, 553 F. Supp. 2d 1178, 1181 (S.D. Cal. 2008) ("[I]t is well-settled that an award of attorney's fees and costs to a successful anti-SLAPP movant is mandatory.").  It is intended to both "discourage . . . strategic lawsuits" and "encourage[] private representation in SLAPP cases." *Ketchum*, Cal. 4th at 1131 (internal citations and quotations omitted).

Here, Defendants are entitled to an award of the attorney's fees and costs incurred in defending against Plaintiff's Second and Third Claims.  "[T]he fee should . . . include compensation for all hours reasonably spent, including those relating solely to obtaining the fee award." *Kearney*, 553 F. Supp. 2d at 1181 (internal citations, quotations, brackets omitted).

//

//

## **CONCLUSION**

For all the foregoing reasons, Defendants respectfully ask the Court (i) to strike Plaintiff's Second and Third Claims for Relief pursuant to California's anti-SLAPP statute, California Code of Civil Procedure § 425.16, because both of these state-law claims focus on protected petition activity under § 425.16(e), and Plaintiff can show no probability of success as such claims fail to state a cognizable cause of action as a matter of law, and (ii) pursuant to § 425.16(c), to award Defendants the attorney's fees and costs of incurred in defending against such claims.

Dated:  July 3, 2012                    TOBEROFF & ASSOCIATES, P.C.
                                        By:      /s/ Marc Toberoff
                                                      Marc Toberoff

                                        Attorneys for Defendants Raenee
                                        Robinson, Ray Charles Robinson, Jr.,
                                        Sheila Robinson, David Robinson, Robert
                                        F. Robinson, Reatha Butler, and Robyn
                                        Moffett

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was electronically

filed by the Court's CM/ECF system; that all participants in this case are

registered CM/ECF users, and that service will be accomplished by the CM/ECF

system.


Dated:  July 3, 2012          TOBEROFF & ASSOCIATES, P.C.
                              By:      /s/ Marc Toberoff
                                     Marc Toberoff
                              Attorneys for Defendants
                              Raenee Robinson, Ray Charles
                              Robinson, Jr., Sheila Robinson,
                              David Robinson, Robert F.
                              Robinson, Reatha Butler, and
                              Robyn Moffet

MOTION TO STRIKE PLAINTIFF'S STATE-LAW CAUSES OF ACTION