TOBEROFF & ASSOCIATES, P.C.
Marc Toberoff (State Bar No. 188547)
 *mtoberoff@ipwla.com*
Pablo D. Arredondo (State Bar No. 241142)
 *parredondo@ipwla.com*
David Harris (State Bar No. 255557)
 *dharris@ipwla.com*
22337 Pacific Coast Highway #348
Malibu, California, 90265
Telephone:  (310) 246-3333
Facsimile:   (310) 246-3101

Attorneys for Defendants,
*Raenee Robinson, Ray Charles
Robinson, Jr., Sheila Robinson, David
Robinson, Robert F. Robinson, Reatha
Butler, and Robyn Moffett*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE RAY CHARLES FOUNDATION, a California Corporation,<br><br>                 Plaintiff,<br><br>      vs.<br><br>RAENEE ROBINSON, an individual; RAY CHARLES ROBINSON, an individual; SHEILA ROBINSON, an individual; DAVID ROBINSON, an individual; ROBERT F. ROBINSON, an individual; REATHA BUTLER, an individual; and ROBYN MOFFET, an individual,<br><br>                 Defendants. | Case No: 12-CV-02725 ABC (FFMx)<br><br>Hon. Audrey B. Collins<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S  STATE LAW CAUSES OF ACTION PURSUANT TO CALIFORNIA'S ANTI-SLAPP LAW (CAL. CIV. PROC. CODE § 425.16)**<br><br>Complaint Filed:  March 29, 2012<br><br>Date:    September 24, 2012<br>Time:    10:00 a.m.<br>Place:   Courtroom 680 |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

ARGUMENT....................................................................................................... 2

I.  THE LEGAL STANDARD .................................................... 2

II.  DELAYING A RULING ON THIS MOTION WOULD
DEFEAT THE PURPOSE OF THE ANTI-SLAPP STATUTE .... 3

III.  THE SERVICE AND FILINGS OF TERMINATION
NOTICES IS PROTECTED ACTVITIY ................................. 4

    A.  Termination Is Protected As An Attempt To Establish
A Property Right Under A Federal Statutory Scheme ......... 4

        1.  The Ninth Circuit Has Held That Analogous
Filings Are Protected Activity.................................. 4

        2.  The Logic Of *Mindys* Applies Here........................... 5

    B.  The Filing And Service Of Termination Notices Is Also
Protected As Litigation-Related Activity............................ 7

    C.  The Filing And Service Of Termination Notices Is
Protected As Communication Concerning An Issue Of
Public Interest ................................................................ 9

    D.  *Duncan v. Cohen* And *DC Comics v. Pacific Pictures
Corp.* Are Inapposite......................................................... 11

    E.  Defendants' Termination Notices Are Exactly The
Type Of Activity The Anti-SLAPP Statute Was
Enacted To Protect ......................................................... 13

IV.  PLAINTIFF HAS NOT AND CANNOT SHOW A
REASONABLE PROBABILTY OF PREVAILING ................. 14

    A.  There Was No Breach Of The Statements ......................... 14

        1.  The Only Obligation Created By The Statements
Was To Not Make Claims Against The Estate ........ 15

        2.  Plaintiff Cannot Claim To Be A Beneficial
Owner ................................................................... 16

    B.  The Statements Are Unenforceable As A Matter Of
Law................................................................................. 17

    C.  Neither *Milne* Nor *Steinbeck* Support Plaintiff's
Position .......................................................................... 20

    D.  Alleged Testamentary Wishes Do Not Control
Copyright Law................................................................ 21

**CONCLUSION**.............................................................................................. 22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*Bailie v. Fisher*,
258 F.2d 425 (D.D.C. 1958) ................................................................. 7

*Batzel v. Smith*,
333 F.3d 1080 (9th Cir. 2003)................................................... 2, 3

*Birker v. Lam*,
156 Cal. App. 4th 275 (2007) ............................................. 9

*Blackburn v. Brady*,
116 Cal. App. 4th  670 (2004) ............................................ 6

*Blanchard v. DIRECTV, Inc.*,
123 Cal. App. 4th 903 (2004) ............................................. 9

*Bouve v. Twentieth Century-Fox Film Corp.*,
122 F.2d 51 (D.C. Cir. 1941) ............................................. 7

*Briggs v. Eden Council for Hope & Opportunity*,
19 Cal. 4th 1106 (1999) .................................................... 8

*Cabral v. Martins*,
177 Cal. App. 4th 471 (2009)  ........................................... 8

*CKE Restaurants, Inc. v. Moore*,
159 Cal. App. 4th 262 (2008) ............................................ 9

*Classic Media, Inc. v. Mewborn*,
532 F.3d 978 (9th Cir. 2008)........................................8, 18, 19, 21

*Cortner v. Israel*,
732 F.2d 267, 271 (2d Cir. 1984)................................. 16

*Cusano v. Klein*,
2012 WL 2154358 (9th Cir. June 14, 2012)................................ 10

*DC Comics v. Pacific Pictures Corp.*,
CV 10-3633 (C.D. Cal. 2010) ................................................................3, 12

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*,
47 Cal. App. 4th 777 (2008) ...................................................................... 10

*Drop Dead Co. v. S. C. Johnson & Son, Inc.*,
326 F.2d 87 (9th Cir. 1963).......................................................................... 7

*Duncan v. Cohen*,
2008 WL 2891065 (N.D. Cal. July 22, 2008) ........................................11, 12

*Esquire, Inc. v. Ringer*,
591 F.2d 796 (D.C. Cir. 1978) ...................................................................... 7

*Feldman v. Park Lane Associates*,
160 Cal. App. 4th 1467  (2008).................................................................... 9

*Fred Fischer Music Co. v. M. Witmark & Sons*,
318 U.S. 643 (1943)..................................................................................... 18

*Garretson v. Post*,
156 Cal. App. 4th 1508 (2007) ..................................................................... 6

*Henthorn v. Department of Navy*,
29 F.3d 682 (D.C. Cir. 1994) ..................................................................... 17

*Hilton v. Harllmark Cards*,
580 F.3d 874 (9th Cir. 2009).................................................................3, 10

*Hosseini v. Coon*,
2011 WL 2582103 (Cal. Ct. App. June 30, 2011) ......................................... 6

*In re Vitamins Antitrust Litig.*,
2001 U.S. Dist. LEXIS 25072 (D.D.C. Mar. 13, 2001) ............................... 17

*Kashian v. Harriman*,
98 Cal. App. 4th 892 (2002) ........................................................................ 7

*Larry Spier, Inc. v. Bourne Company*,
953 F.2d 774 (2d Cir. 1992)...................................................................8, 21

*Ludwig v. Superior Court*,
  37 Cal. App. 4th 8 (1995) ............................................................. 2

*Mann v. Quality Old Time Serv. Inc*,
  120 Cal. App. 4th 90 (2004) ....................................................... 3

*Maranatha Corr., LLC v. Dep't of Corr. & Rehab.*
  158 Cal. App. 4th 1075 (2008)................................................... 6

*Marvel Character, Inc. v. Simon*,
  310 F.3d 280 (2d Cir. 2002)...........................................8, 18, 19

*Milne v. Stephen Slesinger, Inc.*,
  430 F.3d 1036 (9th Cir. 2005)......................................... 7, 18

*Mindys Cosmetics, Inc. v. Dakar*,
  611 F.3d 590 (9th Cir. 2010).......................................4, 5, 6, 7

*Moran v. London Records, Ltd.*,
  827 F.2d 180 (7th Cir. 1987)..................................................... 17

*N.Y. Times v. Tasini*,
  533 U.S. 483 (2001)................................................................ 18

*Navellier v. Sletten*,
  29 Cal. 4th 82 (2002) ............................................................... 7

*Neville v. Chudacoff*,
  160 Cal. App. 4th 1255 (2008)................................................2, 8

*No Doubt v. Activision Publishing, Inc.*,
  192 Cal. App. 4th 1018 (2011)...............................................3, 10

*Nygard, Inc. v. Uusi-Kerttula*,
  159 Cal. App. 4th 1027 (2008)................................................. 10

*Penguin Group (USA) Inc. v. Steinbeck*,
  537 F.3d 193 (2d Cir. 2008).........................................8, 20, 21

*Putnam Family P'ship v. City of Yucaipa, Cal.*,
  673 F.3d 920 (9th Cir. 2012)................................................... 20

iii
Tables of Contents and Authorities

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*,
531 F.3d 962 (9th Cir. 2008).......................................................... 7

*Rouse v. Law Offices of Rory Clark*,
465 F. Supp. 2d 1031 (S.D. Cal. 2006) ......................................... 6

*Ruiz v. Harbor View Community Association*,
134 Cal. App. 4th 1456 (2005)...................................................... 9

*Salma v. Capon*,
161 Cal. App. 4th 1275 (2008)....................................................8, 9

*Saroyan v. William Saroyan Foundation*,
675 F. Supp. 843 (S.D.N.Y. 1987) ............................................... 22

*Scorpio Music S.A. v. Willis*,
2012 U.S. Dist. LEXIS 63858 (S.D. Cal. May 7, 2012) ................ 9

*Sedgwick Claims Mgmt. Services, Inc. v. Delsman*,
2009 WL 2157573 (N.D. Cal. July 17, 2009) .........................11, 13

*Seltzer v. Barnes*,
182 Cal. App. 4th 953 (2010) ....................................................... 2

*Shoemaker v. County of Glenn*,
2010 WL 4835751 (E.D. Cal. Nov. 22, 2010)............................. 15

*Siegel v. Time Warner Inc.*,
496 F. Supp. 2d 1111 (C.D. Cal. 2007)......................................... 8

*Siegel v. Warner Bros. Entertainment, Inc.*,
542 F. Supp. 2d 1098, 1101 (C.D. Cal. 2008) .............................. 4

*Stewart v. Abend*,
495 U.S 207 (1990) ..................................................................... 18

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
190 F.3d 963 (9th Cir. 1999)....................................................3, 13

*Warren v. Fox*,
328 F.3d 1136 (9th Cir. 2003)..................................................... 16

*Wilbanks v. Wolk*,
  121 Cal. App. 4th 883 (2004) ........................................................ 9

**Statutes/Regulations**

Cal. Civ. Proc. Code § 425.16 ...................................................*passim*

17 U.S.C. § 203(a) ............................................................9, 17, 18, 19

17 U.S.C. § 304(c) ...................................................................*passim*

17 U.S.C. § 501(b) ........................................................................ 16

37 C.F.R. § 201.10 ................................................................4, 5, 7

73 Fed. Reg. 3899 37 (Copyright Office notice, Jan. 23, 2008) ........................ 5

**Secondary Authorities**

3 M. Nimmer & D. Nimmer, *Nimmer on Copyright*,
  § 11.07 ..................................................................................... 18

2 M. Nimmer & D. Nimmer, *Nimmer on Copyright*,
  § 9.04 ........................................................................................ 22

# **INTRODUCTION**

Plaintiff The Ray Charles Foundation's ("Plaintiff") Second and Third Claims, California state-law claims for breach of contract and an implied covenant of good faith and fair dealing, against defendants Raenee Robinson, Ray Charles Robinson, Jr., Sheila Robinson, David Robinson, Robert F. Robinson, Reatha Butler, and Robyn Moffett ("Defendants"), should be struck pursuant to California's anti-SLAPP Statute, Cal. Code of Civ. Proc. ("CCP") § 425.16 *et. seq.*

As shown in Defendants' anti-SLAPP motion (Docket No. 15) ("Mot."), Plaintiff's claims are: (1) squarely aimed at protected activity, namely Defendants' service and filing with the U.S. Copyright Office of statutory notices of termination; and (2) have no probability of success on the merits.

Plaintiff's Opposition (Docket No. 21; "Opp.") attempts to mislead the Court through distortions and misrepresentations of the case law. Contrary to Plaintiff's false assertions, no case holds that rights arising under copyright law cannot implicate activity protected under the anti-SLAPP statute. All of the relevant case law, including recent decisions by the Ninth Circuit, shows that Defendants' exercise of their termination rights under the Copyright Act is protected as (1) an attempt to establish a property right under a comprehensive federal scheme, (2) litigation-related activity, and (3) speech and/or petition activity regarding an issue of public interest.

As Plaintiff's claims are squarely aimed at protected activity, it bears the burden of establishing a reasonable probability of success on the merits. Plaintiff cannot do so. Defendants' exercise of their statutory rights to serve and file notices of termination does not breach the brief statements ("Statements") they signed waiving claims against their father's estate. Further, if the Statements were read to waive, limit or encumber Defendants' termination rights, they would be unenforceable as a matter of federal copyright law.

1

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE**

In sum, Plaintiff's Second and Third Claims, which arise from activity protected by the anti-SLAPP statute and have no likelihood of success, should be struck forthwith, and Defendants' request for attorney's fees per CCP § 425.16(c) granted.

## ARGUMENT

### I.  THE LEGAL STANDARD

The anti-SLAPP law, CCP § 425.16, provides substantive immunity from claims that interfere with free speech and petition rights, including the right to communicate with the government, or with private parties in contemplation or furtherance of litigation.  *See Ludwig v. Superior Court*, 37 Cal. App. 4th 8, 14 (1995); *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1268-69 (2008).

The anti-SLAPP law applies to California state-law claims filed in federal court.  *See Batzel v. Smith*, 333 F.3d 1080, 1025-26 (9th Cir. 2003).

Anti-SLAPP motions to strike involve a two-step process.  First, a defendant makes a *prima facie* showing that the plaintiff's claims arise from activity protected under the anti-SLAPP law.  *See Neville*, 160 Cal. App. 4th at 1261-62.  There are at least four categories of protected activities:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) *any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body*, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech *in connection with a public issue or an issue of public interest*.

CCP § 425.16(e) (emphases added).  Even if a claim concerns some activity that is not protected under § 425.16, the claim is subject to the anti-SLAPP law so long as the protected activity is not "merely incidental" to the claim.  *Seltzer v. Barnes*, 182 Cal. App. 4th 953, 962-63 (2010).

Second, once a defendant makes its *prima facie* showing, "[t]he burden

2

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE**

then shifts to the plaintiff to establish a reasonable probability that the plaintiff will prevail." *Batzel*, 333 F.3d at 1024. "[P]laintiffs' burden … [is] to substantiate *each* element of their cause of action, and not merely to counter defendant's affirmative defenses." *No Doubt v. Activision Publishing, Inc.*, 192 Cal. App. 4th 1018, 1027 (2011) (quotations/citation omitted). In applying this statute, courts must heed the Legislature's admonition that it be "construed broadly." *Hilton v. Harllmark Cards*, 580 F.3d 874, 882-83 (9th Cir. 2009).

## II.   DELAYING A RULING ON THIS MOTION WOULD DEFEAT THE PURPOSE OF THE ANTI-SLAPP STATUTE

Plaintiff's suggestion that this Court delay ruling on this Motion until the close of discovery and/or resolution of the appeal in *DC Comics v. Pacific Pictures Corp.*, CV 10-3633 (C.D. Cal. 2010) (Opp. 9, 16) would defeat the very purpose of the anti-SLAPP law – to swiftly dispose of a meritless suit to avoid chilling a defendant's rights by needlessly "increasing the cost of litigation." *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970-71 (9th Cir. 1999). To effectuate this, the statute expressly mandates that an anti-SLAPP motion be heard and decided in a timely manner. *See* CCP § 425.16(f); *Mann v. Quality Old Time Serv., Inc.* 120 Cal. App. 4th 90, 102 (2004) ("The purpose of the anti-SLAPP statute is to encourage participation in matters of public significance by allowing a court to *promptly dismiss* unmeritorious actions or claims….") (emphasis added); *Fair Pol. Pract. Comm. v. Am. Civil Rights Coalition, Inc.*, 121 Cal. App. 4th 1171, 1175 (2004) (noting need for prompt resolution of an anti-SLAPP motion).

Moreover, delaying this Motion would not serve any purpose, while wasting the resources of both the parties and the Court. Plaintiff has not articulated any specific discovery that would help it overcome the failure of its claims as a matter of law. And, as discussed *infra* at pages 12-13, the *DC Comics* appeal concerns issues not relevant here.

3

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE**

**III.   THE SERVICE AND FILING OF TERMINATION NOTICES IS PROTECTED ACTIVITY**

Contrary to Plaintiff's mischaracterizations (Opp. 9), the protected activity here is Defendants' filing of termination notices with the U.S. Copyright Office <u>and</u> the service of those notices on third parties. *See* Mot. 9. Both are protected activities that satisfy the anti-SLAPP statute's first prong.

**A.      <u>Termination Is Protected As An Attempt To Establish A Property Right Under A Federal Statutory Scheme</u>**

**1.      The Ninth Circuit Has Held That Analogous Filings Are Protected Activity**

In *Mindys Cosmetics, Inc. v. Dakar* ("*Mindys*"), 611 F.3d 590, 597 (9th Cir. 2010), the Ninth Circuit held that the filing of a trademark application with the U.S. Patent and Trademark Office is protected petition activity under CCP §§ 425.16(e)(1) and (2) because it is "an attempt to establish a property right under a comprehensive federal statutory scheme."

For the same reason, the filing of termination notices with the U.S. Copyright Office is also protected. The Copyright Act gives authors and their statutory heirs the right to terminate "the exclusive or nonexclusive grant of a transfer or license of the renewal copyright or any right under it" (17 U.S.C. § 304(c)) – *i.e.*, to re-establish a federal intellectual property right.

The Copyright Act's termination scheme and the regulations promulgated thereunder by the Register of Copyrights are comprehensive, "formalistic and complex." *Siegel v. Warner Bros. Entertainment, Inc.*, 542 F. Supp. 2d 1098, 1101 (C.D. Cal. 2008); *see also* 17 U.S.C. § 304(c)(1)-(6) (setting forth statutory requirements for termination); 37 C.F.R. § 201.10 (setting forth regulatory requirements for statutory termination). The termination provisions are not self-executing, and require proper documentation, with specific information, which must be filed with and recorded by the U.S. Copyright Office for a termination

4

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE**

to be effective.  *See id;* 17 U.S.C. § 304(c)(4)(A) ("A copy of the notice shall be recorded in the Copyright Office before the effective date of termination, as a condition to its taking effect."); 73 Fed. Reg. 3899 37 (Copyright Office notice, Jan. 23, 2008); 37 C.F.R. § 201.10(f); *see also* Docket Nos. 23-2, 23-3, Exs. F-1, F-2 (Defendants' notices of termination).

The Copyright Office actively determines whether to accept and record such a statutory termination notice.  It may reject a notice for failure to include required information, or for failure of a party to qualify for termination based on the information provided.  For instance, the Copyright Office "reserves the right to refuse recordation of a notice … if, *in the judgment of the Copyright Office*, such notice of termination is untimely."  37 § C.F.R. 201.10(f)(4) (emphasis added).  The Copyright Office may also overlook "[h]armless errors" in a termination notice if they "do not materially affect the adequacy of the information required."  37 C.F.R. § 201.10(e).

In filing the termination notices, Defendants sought to have the Copyright Office review, accept, and record the notices, and thus secure their future ownership of the renewal copyrights to compositions previously assigned by their father to third parties.  *See* Reply Declaration of Pablo Arredondo, Ex. A (Certificates of Recordation).  The notices undoubtedly qualify under the anti-SLAPP statute as a writing made in "connection with an issue under consideration … by [an] executive … body."  CCP §§ 425.16(e)(1)-(2); *see* Docket Nos. 23-2, 23-3, Exs. F-1, F-2.  Just like the filing of a trademark application, this is protected petition activity.  *Mindys,* 611 F.3d at 597.

## 2.    The Logic Of *Mindys* Applies Here

Plaintiff attempts to circumvent *Mindys*' clear holding by arguing that (1) "[m]ere 'ministerial' communications that do not involve any affirmative determination … are not protected under the anti-SLAPP act," and (2) the Copyright Office's review of "the [termination] notice for form" is "ministerial"

5

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE**

and without discretion.  Opp. 13.  Both points miss the mark.

First, courts have never broadly held "ministerial" communications in support of petition activity are unprotected.  Rather, "ministerial acts involving primarily private [business] transactions are not protected."  *Mindys Cosmetics, Inc.*, 611 F.3d at 597 (summarizing cases); *id.* at 596 ("mere 'ministerial' business communications" unprotected).  The cases misleadingly cited by Plaintiff all concern such "ministerial" *business transactions*.  Opp. 13; *Blackburn v. Brady*, 116 Cal. App. 4th  670, 677 (2004) (Sheriff's sale or auction unprotected as a mere "business dealing or transaction"); *Garretson v. Post*, 156 Cal. App. 4th 1508, 1520-21 (2007) (non-judicial foreclosure proceeding unprotected as a "private, contractual proceeding") (citations and quotations omitted); *Rouse v. Law Offices of Rory Clark*, 465 F. Supp. 2d 1031, 1038 (S.D. Cal. 2006) (recording a lien on real property and other efforts to collect a debt were unprotected because they "occurred between private parties and relate[d] to [a] transaction affecting only the actual debtor").

Moreover, contrary to Plaintiff's argument (Opp. 7-10), petition activity need not involve any sort of official hearing or proceeding to be protected under CCP § 425.16(e)(2).  *Maranatha Corr., LLC v. Dep't of Corr. & Rehab.*, 158 Cal. App. 4th 1075, 1085 (2008) ( holding that the "assertion that 'official proceedings' are a necessary prerequisite to [anti-SLAPP] protection … disregards the plain language of section 425.16(e)(2)"); *Hosseini v. Coon*, 2011 WL 2582103 (Cal. Ct. App. June 30, 2011) (same).

Filing a statutory termination notice with the U.S. Copyright Office is "more than merely a ministerial act connected with a business transaction." *Mindys*, 611 F.3d at 597.  It is an instrumental component of establishing a copyright interest "under a comprehensive federal statutory scheme" (*id.*) and required for an effective termination pursuant to § 304(c)(4)(A).  Just as with a termination notice, the filing of a trademark application is a "formal

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE**

communication to [a government agency] seeking official action [recordation] in a process governed by statute." *Mindys*, 611 F.3d at 596.

Second, as set forth above, the Copyright Office does not act in a "ministerial" fashion as to terminations:  it explicitly "reserves the right" to use its "judgment" (37 C.F.R. § 201.10(f)(4)) and retains discretion to overlook "harmless errors."  37 C.F.R. § 201.10(e).  Courts have consistently recognized that the Copyright Office exercises discretion in similar contexts, such as the filing and recordation of copyright and renewal registrations.  *See Esquire, Inc. v. Ringer*, 591 F.2d 796, 806 (D.C. Cir. 1978) (Copyright Office's review of the plaintiff's copyright registration "unquestionably involved the exercise of administrative discretion."); *Drop Dead Co. v. S. C. Johnson & Son, Inc.*, 326 F.2d 87, 91 (9th Cir. 1963) (rejecting argument that "copyright office is a mere depository [and] that there is no discretion in the copyright office"); *Bailie v. Fisher*, 258 F.2d 425, 426 (D.D.C. 1958) ("[T]he [Copyright] Act establishes a wide range of selection within which discretion must be exercised by the Register….") (citations/quotations omitted); *Bouve v. Twentieth Century-Fox Film Corp.*, 122 F.2d 51, 52 (D.C. Cir. 1941) (rejecting "extreme position that the Register [of Copyrights] is only a ministerial officer"); *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 975 (9th Cir. 2008) (affirming "principle of deference to the view of the Copyright Office" as to its interpretation and application of the Copyright Act).

**B.    The Filing And Service Of Termination Notices Is Also Protected As Litigation-Related Activity**

"The Constitutional right of petition encompasses the basic act of filing litigation." *Navellier*, 29 Cal. 4th at 90.  As CCP § 425.16's protection extends to "any act … in furtherance of the [] right of petition," the statute also protects "litigation-related activities," and courts adopt an "expansive view of what constitutes litigation-related activities." *Kashian v. Harriman*, 98 Cal. App. 4th

7

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE**

892, 908 (2002); *Cabral v. Martins,* 177 Cal. App. 4th 471 (2009) (lawyer's revision of will months before testator died was protected conduct because eventually the revised will would need to be filed with a probate court).

Thus, "communications preparatory to or in anticipation of the bringing of an action" are protected. *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1115 (1999); *see Neville*, 160 Cal. App. 4th at 1268 (if a communication "concern[s] the subject of the dispute" and is in "anticipation of litigation," it is protected); *Salma v. Capon*, 161 Cal. App. 4th 1275, 1285 (2008) ("Communications made in preparation for or in anticipation of … an action … fall within the ambit of these subdivisions.")

Here, Defendants' filing and service of the termination notices were communications in contemplation or anticipation of litigation. When Defendants decided to exercise their termination rights, they did not hire a transactional attorney; they hired a copyright litigator. *See, e.g.*, *Classic Media, Inc. v. Mewborn*, 532 F.3d 978 (9th Cir. 2008) (termination litigation by Defendants' counsel); *Siegel*, 542 F. Supp. 2d 1098 (same); *Siegel v. Time Warner Inc.*, 496 F. Supp. 2d 1111 (C.D. Cal. 2007) (same).

The service and filing of termination notices is naturally adversarial, as it involuntarily extinguishes the grantee's ownership of copyrights. When those copyrights are valuable, the service and filing of termination notices invariably acts as the opening salvo to a lawsuit and/or related settlement negotiations. Absent a settlement, the terminated grantee sues to invalidate the termination, or they repudiate the termination, forcing the terminating party to go to court to enforce the termination. *See, e.g.*, *Classic Media, Inc.*, 532 F.3d 978; *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036 (9th Cir. 2005); *Penguin Group (USA) Inc. v. Steinbeck*, 537 F.3d 193 (2d Cir. 2008); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280 (2d Cir. 2002); *Larry Spier, Inc. v. Bourne Company*, 953 F.2d 774 (2d Cir. 1992);  *Siegel*, 542 F. Supp. 2d 1098; *Siegel*, 496 F. Supp. 2d 1111;

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE**

*Scorpio Music S.A. v. Willis*, 2012 U.S. Dist. LEXIS 63858 (S.D. Cal. May 7, 2012); *Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720 (S.D.N.Y. 2011).[1]

In this respect, termination notices (required to effectuate termination) are comparable to other legal notices (required prior to filing suit) that courts have consistently held are protected litigation-related activity.  *See Salma*, 161 Cal. App. 4th at 1285 (notice of rescission of contract was protected as litigation-related activity); *CKE Restaurants, Inc. v. Moore*, 159 Cal. App. 4th 262, 271 (2008) (sending a notice to restaurant accusing it of violating health standards was protected litigation-related activity); *Birker v. Lam*, 156 Cal. App. 4th 275, 282 (2007) (notice terminating tenancy is protected as a prerequisite to unlawful detainer action).  Termination notices also resemble other sorts of protected communications made in anticipation of litigation, such as pre-lawsuit demand letters.  *See Blanchard v. DIRECTV, Inc.*, 123 Cal. App. 4th 903, 918 (2004); *Feldman v. Park Lane Associates*, 160 Cal. App. 4th 1467, 1481-82 (2008).

## C. The Filing And Service Of Termination Notices Is Protected As Communication Concerning An Issue Of Public Interest

Cal. Civ. Proc. Code § 425.16(e)(4) also extends protection to "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  California courts have held that this section protects not only public communications and petitions, but also "private conversations regarding a public issue."  *Ruiz v. Harbor View Community Association*, 134 Cal. App. 4th 1456 (2005); *see Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 897 n.4 (2004) ("Section § 425.16, therefore, governs even private communications, so long as

---

[1] Given the lengthy periods before the "termination windows" open under the Copyright Act, many of these lawsuits are just now cropping up.  *See* 17 U.S.C. § 304(c) (56 years after copyright secured), 304(d) (75 years after copyright secured), 203(a) (35 years after post-January 1, 1978 copyright grant).

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE**

they concern a public issue."); *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777, 784 (1986) ("The fact that the communication was made to other private citizens rather than to the official agency does not exclude it from the shelter of the anti-SLAPP suit statute").

In determining whether communications concern a "public issue," the courts adopt a "broad view." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1041 (2008). The "issue need not be 'significant to be protected by the anti-SLAPP statute – it is enough that it is one in which the public takes an interest." *Id.* at 1042; *see Hilton*, 580 F.3d at 888 (holding that card spoofing Paris Hilton's trademark phrase and public persona was protected under the anti-SLAPP statute because it concerned "matters of widespread public interest").

Here, the termination notices deal with an issue "in which the public is interested" (*Nygard, Inc.* 159 Cal. App, 4t at 1041*)* – namely, Ray Charles and his music. As Plaintiff admits, "Ray Charles was a world-renowned singer and songwriter who, according to many, changed the world of music" and "inspired and entertained a legion of millions of fans." Complaint ¶ 24.

The courts have repeatedly held that communications involving well-known musical performers are protected under the anti-SLAPP statute as raising issues of public interest. *See No Doubt*, 192 Cal. App. 4th at 1027 (use of the likenesses of the band No Doubt was a matter of public interest "because of the widespread fame No Doubt had achieved"); *Cusano v. Klein*, 2012 WL 2154358 (9th Cir. June 14, 2012), at *1 ("The challenged activities were in connection with a public issue because they relate to KISS and its members….").

Defendants' termination notices – which will determine who will hold the rights to the iconic Ray Charles' music – are thus communications involving a matter "of public interest," protected by CCP § 425.16(e)(4).

//

//

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE**

**D.**     ***Duncan v. Cohen* And *DC Comics v. Pacific Pictures Corp.* Are Inapposite**

Plaintiff's repeated insistence that *Duncan v. Cohen*, 2008 WL 2891065 (N.D. Cal. July 22, 2008) is "directly on point" (Opp. 10) is simply false.  The defendants in *Duncan* did not base their anti-SLAPP motion on the service and filing of a termination notice, the registration or renewal of a copyright, or any other assertion of rights under the Copyright Act.  Nor did anyone argue that those activities were or were not protected under the anti-SLAPP statute.

Rather, in *Duncan*, an author sued filmmakers for soliciting funds to make an unauthorized movie based on one of his books.  *Id.* at *1.  The filmmakers argued that their efforts were protected by the anti-SLAPP statute as free speech. *Id.*  The court rejected the filmmakers' anti-SLAPP motion because they did not purport to have a right to make the film based on the First Amendment, but rather on a simple alleged contract.  *Id.* at *2.  *See Sedgwick Claims Mgmt. Servs. v. Delsman*, 2009 U.S. Dist. LEXIS 61825, at *27 (N.D. Cal. July 16, 2009) (characterizing *Duncan* as holding that anti-SLAPP was inapplicable "because the defendant was not predicating its use of material from plaintiff's book on its right to free speech").  As such, *Duncan* did not remotely implicate, much less decide, whether the service and filing of statutory termination notices, or copyright registrations, constitutes protected activity.

Plaintiff's repeated reliance upon *Duncan* is bizarre.  Plaintiff argues that, since the author must have registered his book with the Copyright Office to file suit, *Duncan*'s rejection of the filmmakers' anti-SLAPP argument means that registering copyrights is unprotected.  Opp. 11.  But in *Duncan,* the author did not argue his registration of the copyright was protected activity – after all, he was *the plaintiff*.  The filmmakers who sought anti-SLAPP protection held no copyright, and argued merely that their moviemaking was protected speech under the anti-SLAPP statute.  Because the issue was not raised or even relevant,

11
**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE**

the Court certainly did not hold, as Plaintiff claims, that "the act of filing a registration is not protected activity." *Id.*

Plaintiff further claims that *Duncan* was concerned that "if one were to take [the filmakers'] position … that *assertion of rights under copyright law* was sufficient to trigger the protections of the anti-SLAPP statute, then 'every suit for copyright infringement or breach of contract' involving a copyright work would be subject to the California's anti-SLAPP statute." Opp. 11. This is not true. *Duncan* was concerned only with whether suits involving films should always trigger the anti-SLAPP statute:

> [T]he [filmakers] improperly suggest that … any suit involving *the creation or dissemination of films* are subject to an anti-SLAPP suit. If this was true, every suit for copyright infringement or breach of contract involving *a film or television show* would be subject to California's anti-SLAPP statute. (emphases added).

*Duncan,* 2008 WL 2891065, at *3.

For Plaintiff to chastise Defendants for "having omitted" *Duncan* is outlandish. Opp. 2, 10. *Duncan* was omitted because it has no bearing here.

Similarly irrelevant is *DC Comics*, CV 10-3633. There, the defendants argued that state-law claims aimed at their termination notices were barred by the anti-SLAPP statute. However, in denying defendants' anti-SLAPP motion, the district court (Hon. Judge Otis D. Wright II presiding), in a decision currently on appeal before the Ninth Circuit (Appeal No. 11-56934), ***did not*** hold that the service and filing of statutory termination notices is unprotected activity. *See* Docket No. 23-1, Ex. D (*DC Comics* order). The court assumed that the service and filing of termination notices would be protected. *Id*. at 3 ("The protected activities advanced by Defendants, while relevant to be sure, are not the material facts underlying the alleged interference."). Rather, as Plaintiff acknowledges (Opp. 16), *DC Comics* merely held that the plaintiff's claims purportedly did not "arise" out of this protected activity, but out of alleged unprotected business practices. Docket No. 23-1, Ex. D at 3-7. Here, in

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE**

contrast, Plaintiff's Complaint and Opposition repeatedly identify "Defendants' serving of the termination of transfer notices" as the cause of the alleged breach and its damages, placing the claims squarely within the anti-SLAPP statute. Mot. 3; *see id.* at 17; Complaint ¶¶ 50(a), 54.

### E. <u>Defendants' Termination Notices Are Exactly The Type Of Activity The Anti-SLAPP Statute Was Enacted To Protect</u>

The service and filing of statutory termination notices is precisely the sort of activity that the anti-SLAPP statute was designed to protect. As courts have explained, "[t]he archetypal SLAPP complaint is a generally meritless suit[ ] brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Sedgwick Claims Mgmt. Services, Inc.* 2009 WL 2157573, at *7 (N.D. Cal. July 17, 2009) (quotations/citations omitted); *United States ex rel. Newsham*, 190 F.3d at 970-71 ("The hallmark of a SLAPP suit is that it lacks merit, and is brought with the goals of obtaining an economic advantage over a citizen party by increasing the cost of litigation to the point that the citizen party's case will be weakened or abandoned, and of deterring future litigation.").

Because the Copyright Act's termination right lies in stark contrast to ordinary contract principles, and termination, by definition, cancels prior agreements, regardless of the parties' original intentions or expectations, it is unsurprising that such will often trigger meritless breach of contract claims, as here. Many such terminations will implicate deep-pocketed studios and publishers; "large private interests" which can readily encumber a termination with litigation, create leverage by driving up the terminating party's costs, and dissuade others from exercising their statutory rights. Plaintiff's argument that terminations should not be protected is not well taken; this is exactly the sort of activity that is and should be protected under the anti-SLAPP law.

\*\*\*\*\*

13

For all of these reasons, Defendants have made the requisite *prima facie* showing that their service and filing of the termination notices constitutes protected activity under CCP § 425.16(e)(1), (2), and (4).

## IV.   PLAINTIFF HAS NOT AND CANNOT SHOW A REASONABLE PROBABILITY OF PREVAILING

As set forth in Defendants' underlying Motion and in Defendants' concurrently-filed Motion to Dismiss (Docket No. 16), Plaintiff's Second and Third Claims are meritless as a matter of law and therefore have no probability of success.  Plaintiff's opposition to the instant motion simply reproduces the arguments it made in opposition to Defendants' Motion to Dismiss.  For the convenience of the Court, and so that all of the briefing necessary to decide Defendants' anti-SLAPP motion is included in a single filing, the pertinent arguments from Defendants' Reply in support of their Motion to Dismiss are included below.

### A.   <u>There Was No Breach Of The Statements</u>

Plaintiff has no probability of succeeding on its Second and Third Claims because, even under Plaintiff's own factual scenario, there has been no breach. Plaintiff alleges that Defendants violated their agreement (*i.e.*, the Statements) to "waiv[e] any right to make a claim against [their father's] estate" by serving and filing statutory termination notices to recapture certain Copyrights from Warner/Chappell Music.  Complaint ¶¶ 50-51.  However, as discussed in Defendants' Motion to Strike (Mot. 10-11), Defendants' father did not own these Copyrights when they signed the Statements, the estate did not own them after his passing, and Plaintiff does not own them now.  Complaint ¶¶ 24-33.  At all relevant times, the Copyrights have been held by Warner/Chappell and/or its predecessors-in-interest.  As a simple factual matter, Defendants have not exercised "any right to make a claim against [their father's] estate."  Rather, they have exercised their termination right against Warner/Chappell.  Moreover,

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE**

1  Plaintiff is not the estate – it is merely a beneficiary of the long-probated estate.

2  *See* Docket No. 22-1, Ex. I (Order from Probate Court).

3  Although Plaintiff does not address this issue in its opposition to

4  Defendants' Motion to Strike, it addresses it in its opposition to Defendants'

5  Motion to Dismiss (Docket No. 19; "MTD Opp.").  Plaintiff's arguments are

6  without merit.

7  **1.  The Only Obligation Created By The Statements Was To**

8  **Not Make Claims Against The Estate**

9  Plaintiff strains to expand the unambiguous terms of the Statements far

10  beyond their express language.  The Statements contain only one obligation:  "I

11  am waiving any right to make a claim against [my father's] estate."  *See* Docket

12  No. 22-1, Exs. A-G (The Statements).

13  Plaintiff nonetheless argues that "[b]ecause the revenues are alleged … as

14  being part of Ray Charles's estate …, an action by Defendants that would cease

15  the payment of this income … constitutes a claim against Ray Charles's estate."

16  MTD Opp. 14.  In other words, Plaintiff argues that the terminations are "a

17  claim against [the] estate" simply because they will negatively impact the

18  revenues of Plaintiff – a beneficiary of the estate – years after the estate was

19  probated and closed.  *See* Docket No. 22-1, Ex. I.  This argument erroneously

20  transforms the simple terms of the Statements into some undefined and

21  indefinite obligation not to take any action that might adversely impact any

22  beneficiary of the estate at any time.

23  Nothing in the plain language of the Statements imposes such a broad

24  obligation.  Nor does Plaintiff's Complaint even allege that the parties intended

25  to impose or accept such an obligation.

26  The Statements are unambiguous:  they prevent Defendants only from

27  making a claim against their father's estate.  Defendants have not made any such

28  claim.  As such, dismissal is proper.  *See Shoemaker v. County of Glenn*, 2010

15

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE**

WL 4835751, at *2 (E.D. Cal. Nov. 22, 2010) (granting motion to dismiss because "[r]esolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous") (citation omitted) *aff'd*, 2012 WL 3111016 (9th Cir. Aug. 1, 2012).

## 2.   Plaintiff Cannot Claim To Be A Beneficial Owner

Plaintiff cannot salvage its claims by arguing that the terminations amount to a "claim against [their father's] estate" because Plaintiff is a "beneficial owner" of the Copyrights.  MTD Opp. 14.

First, "beneficial [copyright] ownership" is a legal concept applicable to determining standing in copyright infringement cases and has no relevance here. *See* 17 U.S.C. § 501(b); *Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984) ("A beneficial owner may bring an infringement action to protect his economic interest …."). It does not and cannot transform Defendants' termination notices into a "claim against [their father's] estate" for the reasons discussed above.  An action that is alleged to adversely affect some interest of an estate beneficiary years after the estate is probated and its assets have been distributed does not constitute a claim against the original estate.

Second, Plaintiff's description of itself as a "beneficial owner" directly contradicts a core allegation in its Complaint – namely, that Ray Charles purportedly composed his songs as "work-for-hire."  Complaint ¶¶ 25-27; 43(b). The Ninth Circuit has specifically held that an author who creates copyrightable material as a "work-for-hire" is not a "beneficial owner," even if the author receives royalties.  *Warren v. Fox*, 328 F.3d 1136, 1145 (9th Cir. 2003) ("[A] grant of royalties to a creator of a work for hire, absent an express contractual provision to the contrary, does not create a beneficial ownership interest in that creator."); *Moran v. London Records, Ltd.*, 827 F.2d 180, 184 (7th Cir. 1987) (concluding the same and noting that the Court's research had not revealed any cases applying beneficial ownership in a work-for-hire arrangement).

16

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE**

Although Defendants vigorously dispute Plaintiff's "work-for-hire" allegations, Plaintiff should not be permitted to navigate around a motion to strike by adopting a factual narrative that is entirely inconsistent with its own Complaint.  *See Henthorn v. Department of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994) (stating that factual allegations in a plaintiff's brief opposing a 12(b)(6) motion "most certainly may not be considered when … they … contradict those alleged in the complaint."); *In re Vitamins Antitrust Litig.*, 2001 U.S. Dist. LEXIS 25072 (D.D.C. Mar. 13, 2001) ("A plaintiff is not entitled to avoid dismissal by attempting to amend his complaint in a legal memorandum filed in response to a motion to dismiss.").

## B.   The Statements Are Unenforceable As A Matter of Law

Plaintiff also has no probability of succeeding on its Second and Third Claims because the Copyright Act does not permit an author or his heirs' termination rights to be contractually waived, circumvented or encumbered.  *See* 17 U.S.C. §§ 304(c)(2)(5), 203(a)(5).  To the extent the Statements are read by Plaintiff to waive, limit or restrict Defendants' statutory termination rights, the Statements are entirely unenforceable.  *Id.*

Plaintiff's argument that its Claims do not seek to restrict Defendants' termination rights, but simply to penalize them for exercising such rights (Opp. 18-19), is contradicted by the language of the Statement it relies upon – "waiving any right to make a claim against [the] estate."  Docket No. 22-1, Exs. A-G .  If this applies to termination, as argued by Plaintiff, then the Statements' "waive[r]" of termination rights is void and ineffective under the Copyright Act.

Moreover, Plaintiff's insincere distinction between preventing and penalizing termination evinces a fundamental misconception of the purpose of the Copyright Act's termination provisions.

As detailed in Defendants' anti-SLAPP Motion (Mot. 4-7), the 1909 Copyright Act permitted an author and his heirs to recapture their copyrights

17

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE**

after twenty-eight years by renewing the copyright for a second twenty-eight year period.  *See Stewart v. Abend*, 495 U.S. 207, 217 (1990) (the renewal right "provides authors a second opportunity to obtain remuneration for their works); *Marvel Character, Inc. v. Simon*, 310 F.3d 280, 282-283 (2d Cir. 2002) (same). After this purpose was thwarted in *Fred Fischer Music Co. v. M. Witmark & Sons*, 318 U.S. 643 (1943), Congress "[r]espond[ed] to the continual erosion of authors' [renewal] rights" by creating the termination right in the 1976 Copyright Act.  *Simon*, 310 F.3d at 284; 17 U.S.C. §§ 304(c), 203(a).  In so doing, Congress abrogated standard freedom of contract principles to make the termination right immune to contractual limitations: the right may be exercised "notwithstanding ***any*** agreement to the contrary."  17 U.S.C. §§ 304(c)(5), 203(a)(5) (emph. added).

That the termination right is "inalienable" is therefore not a "facile rhetorical flourish" (Opp. 21); rather, it goes to the heart of this statutory right, as noted by both the Supreme Court and the Ninth Circuit.  *See Stewart*, 495 U.S at 230 ("The 1976 Copyright Act provides ... an inalienable termination right."); *N.Y. Times v. Tasini*, 533 U.S. 483, 497 (2001) (same); *Mewborn*, 532 F.3d at 983 (noting the "inalienability" of termination rights).

Thus, under the Copyright Act, a contract need not explicitly or directly limit the termination right to be deemed an unenforceable "agreement to the contrary."  17 U.S.C. § 304(c)(5); *see, e.g.*, *Simon*, 310 F.3d at 280 (holding that "an agreement made after a work's creation stipulating that the work was created as a non-terminable work for hire constitutes an 'agreement to the contrary'").

As *Nimmer* explains, there are any number of contractual provisions that, by virtue of their effect, work to impermissibly restrict an author or his heirs' termination rights.  3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* ("*Nimmer*") § 11.07[E][2][b][ii].  For instance, whereas a contractual penalty to pay liquidated damages for termination "does not, strictly speaking, negate

18

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE**

1  termination rights…, its economic consequences render it certain to act in

2  contravention to those rights"  and, "[f]or that reason, it should also be treated as

3  an 'agreement to the contrary' of termination."  *Id.* (citations omitted).

4      Here, Plaintiff argues that the Statements entitle it to recover "*at least*

5  $3,500,000" from Defendants as a result of their exercising their federal

6  termination rights.  Complaint ¶ 51.  This exorbitant penalty alone would render

7  termination economically infeasible.  But Plaintiff does not stop there – it

8  alleges that it is entitled to "a constructive trust … upon all funds, assets,

9  revenues and profits that Defendants … may receive from the future licensing or

10 other exploitation of the musical compositions at issue."  *Id.* at 21, ¶ 3.

11     In other words, Plaintiff asserts that the Statements require that

12 Defendants disgorge *any* economic benefits they may receive from exercising

13 their termination rights and also pay millions of dollars in damages.  This would

14 defeat the entire purpose of the termination right and render Defendants'

15 terminations meaningless.  *See Mewborn*, 532 F.3d at 983 (the purpose of

16 termination is to provide statutory heirs with "the monetary rewards of a work").

17     Plaintiff's repeated assertion that it is not trying to limit the termination

18 right is therefore entirely disingenuous.  Opp. 18-19.  If (a) the Statements are as

19 punitive as Plaintiff alleges, but (b) are not held to be an unenforceable

20 "agreement to the contrary" under the Copyright Act, then "the termination

21 provision would be rendered a nullity."  *Simon*, 310 F.3d at 290.  Publishers

22 could freely use their superior bargaining power to compel authors to agree to

23 such punitive provisions upfront to get their works published.  "In effect, such

24 an interpretation would likely repeat the result wrought by the *Fred*

25 *Fisher* decision and provide a blueprint by which publishers could effectively

26 eliminate an author's termination right."  *Id.* at 291.  Plaintiff's facile contention

27 that "sections 203(a)(5) and 304(c)(5) only appl[y] where a party is seeking to

28 use an agreement to [directly] prevent the termination of a grant from being

19

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE**

effectuated" must be rejected.  *Id.* at 290-291 (refusing to adopt such a construction of the termination provisions that would "thwart the clear legislative purpose and intent of the statute").[2]

### C.    Neither *Milne* Nor *Steinbeck* Support Plaintiff's Position

Plaintiff attempts to distract from the weaknesses of its argument with a lengthy discussion of two inapplicable cases.  Opp. 22-24.  *Penguin Group (USA) Inc.*, 537 F.3d 193, and *Milne*, 430 F.3d 1036 (9th Cir. 2005), both dealt with the narrow question of whether a statutory heir's express agreement to (1) revoke a terminable pre-1978 copyright grant and (2) replace it with a non-terminable post-1978 re-grant was an unenforceable "agreement to the contrary."

Here, Plaintiff does not and cannot allege that there was any such revocation and re-grant of the Copyrights in dispute.  Nor does Plaintiff even attempt to analogize the facts of this case to *Steinbeck* or *Milne*.  Nor do *Milne* or *Steinbeck* advance Plaintiff's arguments.

First, both *Milne* and *Steinbeck* held the agreements at issue were enforceable because the statutory heirs had (1) leveraged their termination rights within an open termination window; (2) by expressly revoking a prior copyright grant and re-granting their copyrights, and (3) by renegotiating substantially better economic terms.  *Milne*, 430 F.3d at 1044, 1046; *Steinbeck*, 537 F.3d at 202.  The renegotiated agreements under the threat of termination achieved "the very result envisioned by Congress [when it enacted] the termination

---

[2] Moreover, because it would permit state contract law to thwart the purpose of the Copyright Act's termination provisions, Plaintiff's misreading of the Statements to penalize Defendants for exercising their federal rights is also barred by more general principles of federal preemption.  *Putnam Family P'ship v. City of Yucaipa, Cal.*, 673 F.3d 920, 933 (9th Cir 2012) ("Federal law impliedly preempts a state or local law if … the local law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of a federal law.") (quotations omitted).

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE**

provisions." *Milne*, 430 F.3d at 1047; *see Steinbeck*, 537 F.3d at 202.  As such, the "revocation and re-grant" contracts were "not agreements to the contrary." Here, Plaintiff argues that the Statements require Defendants to pay millions of dollars as a penalty for asserting their statutory rights.  This is certainly not the result that Congress intended.

Second, the Ninth Circuit has specifically refused to expand *Milne* beyond its "distinct factual scenario."  *Mewborn*, 532 F.3d at 978.   Plaintiff's efforts to rely on *Milne* for some general proposition that the termination right is "not as absolute or 'inalienable' as Defendants would like to have this Court believe" is misplaced.  Opp. 20.  If anything, *Milne* and *Steinbeck* prove the opposite – a single, narrow exception to the inalienability of the termination right, which is not applicable here.

### D.   Alleged Testamentary Wishes Do Not Control Copyright Law

In both its Complaint and its Opposition, Plaintiff has tried to mask its legal shortcomings behind purported concerns about charitable causes and testamentary wishes.  Both the Copyright Act and the cases cited by Defendants show that such concerns do not control copyright law.

Congress effectively overrode an author's wishes as to the termination right, by giving an author's widow, children and grandchildren the termination right regardless (or at the expense) of the author's will or estate.  *See* 17 U.S.C. § 304(c)(2) (estate holds termination rights **only** "[i]n the event that the author's widow or widower, children, and grandchildren are not living").

In *Larry Spier, Inc.*, 953 F.2d at 778, the Second Circuit specifically held that the statutory heirs' termination rights trumped the author's will, which left his copyrights to a third party:  "Granting supremacy to the author's intent as against the rights of the widow and children would obviate the reason that Section 304(c) is in the Copyright Act to begin with and distort the deliberate legislative choice made by Congress…."

21

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE**

Similarly, in *Saroyan v. William Saroyan Foundation*, 675 F. Supp. 843, 844 (S.D.N.Y. 1987), the court rejected the argument that "the Foundation's charitable purposes should prevail over … private interests" in determining whether an author's bequest of copyright renewal rights to the Foundation had been effective. *See also* 2 *Nimmer* § 9.04[B] ("An author in effect is required by statutory mandate to leave the right to obtain renewals to his widow and children if he has any.").

Plaintiff's efforts to shield its meritless legal claims behind the purported wishes of Defendants' father and its own purported charitable purpose must therefore be rejected.

## CONCLUSION

For the foregoing reasons, Defendants respectfully ask this Court to strike Plaintiff's Second and Third Claims pursuant to California's anti-SLAPP statute, CCP § 425.16, and award Defendants the attorney's fees and costs incurred in defending against these claims per CCP § 425.16(c).

Dated: August 13, 2012               RESPECTFULLY SUBMITTED,

Marc Toberoff
TOBEROFF & ASSOCIATES, P.C.

Attorneys for Defendants,
Raenee Robinson, Ray Charles Robinson, Jr.,
Sheila Robinson, David Robinson, Robert F.
Robinson, Reatha Butler, and Robyn Moffett

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE**