1  Yakub Hazzard (State Bar No. 150242)
   YHazzard@rkmc.com
2  Rex D. Glensy (State Bar No. 198909)
   RDGlensy@rkmc.com
3  ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
   2049 Century Park East
4  Suite 3400
   Los Angeles, CA  90067-3208
5  Telephone:  310-552-0130
   Facsimile:   310-229-5800
6
7  Attorneys for Plaintiff
   THE RAY CHARLES FOUNDATION
8
                    UNITED STATES DISTRICT COURT
9
                   CENTRAL DISTRICT OF CALIFORNIA
10

11
   THE RAY CHARLES                     Case No.  12-CV-02725 ABC (FFMx)
12 FOUNDATION, a California
   Corporation,                        Hon. Audrey B. Collins
13
                   Plaintiff,          **PLAINTIFF THE RAY CHARLES
14                                      FOUNDATION'S SUPPLEMENTAL
   v.                                   BRIEF RE: DEFENDANTS'
15                                      MOTION TO DISMISS PURSUANT
   RAENEE ROBINSON, an individual;      TO THE COURT'S SEPTEMBER
16 RAY CHARLES ROBINSON, JR., an        25, 2012, ORDER**
   individual; SHEILA ROBINSON, an
17 individual; DAVID ROBINSON, an       Complaint Filed:  March 29, 2012
   individual; ROBERT F. ROBINSON,
18 an individual; REATHA BUTLER; an
   individual; and ROBYN MOFFETT,
19 an individual,
20                 Defendants.
21
22
23
24
25
26
27
28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................... 1

II.  THE FOUNDATION HAS STANDING TO CHALLENGE THE
TERMINATIONS ....................................................................... 4

III.  THE FOUNDATION HAS ALLEGED, AND CAN ALLEGE MORE,
FACTS TO SUPPORT ITS CLAIM THAT THE WORKS WERE
NOT WORKS MADE FOR HIRE ............................................. 13

IV.  REQUEST FOR ORAL ARGUMENT ....................................... 17

V.  CONCLUSION .......................................................................... 17

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allen v. Wright,*
  468 U.S. 737 (1984) ................................................................. 7

*Althin CD Medical, Inc. v. West Suburban Kidney Center, S.C.,*
  837 F. Supp. 827 (N.D. Ill. 1994)............................................ 5

*Bennett v. Spear,*
  520 U.S. 154 (1997) ........................................................... 8, 10

*Brocade Communs. Sys. v. A10 Networks, Inc.,*
  2011 U.S. Dist. Lexis 30227, *12 (N.D. Cal. Mar. 23, 2011) .......................... 14

*Burns v. United States,*
  501 U.S. 129 (1991) ........................................................... 5, 6

*Cetacean Cmty. v. Bush,*
  386 F.3d 1169 (9th Cir. 2004) ................................................. 7

*Clarke v. Securities Indus. Ass'n,*
  479 U.S. 388 (1987) ............................................................ 8

*Classic Media, Inc. v. Mewborn,*
  532 F.3d 978 (9th Cir. 2008) ................................................. 6

*Devlin v. Scardelletti,*
  536 U.S. 1, 7 (2002) .......................................................... 7

*Director of Revenue of Mo. v. CoBank, ACB,*
  531 U.S. 316 (2001) ........................................................... 5

*FEC v. Akins,*
  524 U.S. 11, 20 (1998) ........................................................ 7

*Fred Ahlert Music Corp. v. Warner/Chappell Music, Inc.*
  155 F.3d 17 (2nd Cir. 1998) ................................................. 12

*MCI Telecommunications Corp. v. AT&T,*
  512 U.S. 218 (1994) ........................................................... 5

*Mills Music Inc. v. Snyder,*
  469 U.S. 153 (1985) .......................................................... 12

*Milne v. Stephen Slesinger, Inc.,*
  430 F.3d 1036 (9th Cir. 2005) ............................................... 6

*Nat'l Credit Union Admin. v. First Nat'l Bank and Trust Co.,*
  522 U.S. 479 (1998) .......................................................... 11

*Nazir v. County of Los Angeles,*
  2011 U.S. Dist. Lexis 26820, n.12 (C.D. Cal. Mar. 2, 2011)............................ 14

*Ocean Advocates v. United Stated Army Corps of Eng'rs,*
  361 F. 3d 1108 (9th Cir. 2004) ............................................... 8

*PAE Government Services., Inc. v. MPRI, Inc.,*
  514 F.3d 856 (9th Cir. 2007) ................................................ 14

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES
## (continued)

Page

*Ryabyschchuk v. Citibank (South Dakota) N.A.*,
  2011 U.S. Dist. Lexis 136506, **9-10 (S.D. Cal. Nov. 28, 2011).......................14

*Siegel v. Warner Bros. Entertainment Inc.*,
  542 F. Supp. 2d 1098 (C.D. Cal. 2008)..............................................................12

*Silvers v. Sony Pictures Entm't*,
  402 F.3d 881 (9th Cir. 2005)...............................................................................5

*Spier Inc. v. Bourne Co.*,
  953 F.2d 774 (2nd Cir. 1992) .............................................................................12

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
  368 F.3d 1053 (9th Cir. 2004)..........................................................................7, 8

*United Savings Ass'n v. Timbers of Inwood Forest Associates* ,
  484 U.S. 365 (1988) .............................................................................................4

*United States v. Boisdore Heirs*,
  49 U.S. (8 How.) 113 (1850) ...............................................................................4

*Warth v. Seldin*,
  422 U.S. 490 (1975) .............................................................................................7

*Whitman v. American Trucking Ass'ns, Inc.*,
  531 U.S. 457 (2001) .............................................................................................5

*Woods vs. Bourne Co.*,
  60 F.3d 978 (2nd Cr. 1995)................................................................................12

**Statutes**

16 U.S.C. §1540(g) ...................................................................................................8

17 U.S.C. §203(a) ...........................................................................................passim

17 U.S.C. §304(c) ...........................................................................................passim

17 U.S.C. §501(b) ...........................................................................................passim

**Rules**

Federal Rule of Civil Procedure 12(b)(6)................................................................14

Federal Rule of Civil Procedure 11(b) ...................................................................13

**Regulations**

37 C.F.R. §201.10.......................................................................................................9

# I.

## INTRODUCTION

On September 24, 2012, the Court heard oral argument on Defendants' motion to dismiss The Ray Charles Foundation's (the "Foundation") first claim for Declaratory Relief on the grounds that the Foundation lacked standing to challenge the notices of termination of transfer served by Defendants seeking to terminate copyright transfers to which the Foundation (as Ray Charles's successor) is a party and under which the Foundation receives royalties.  Following lengthy oral argument, on September 25, 2012, the Court issued an order requesting additional briefing on two questions:

(1)     Whether, assuming the Foundation is the "beneficial owner" of the copyrights, it has standing to challenge the terminations under §§304(c) and 203(a); and

(2)     Whether, given the allegations in the current complaint, the Foundation can allege facts to support a claim that the works were not works made for hire consistent with Rule 11.

As explained in greater detail below, the answer to both of these questions is yes.  First, as the beneficial owner of the copyrights pursuant to the very agreements Defendants seek to terminate, the Foundation clearly has both Article III and prudential standing to bring its Declaratory Relief claim.  In the only provision of the Copyright Act containing a standing requirement—17 U.S.C. §501(b)—Congress has already provided that beneficial owners, like the Foundation, have standing to pursue claims for copyright infringement.  The Foundation's relationship to the legal copyright transferee Warner/Chappell Music (as Progressive's successor) is identical in the assignment context as it is in the ownership context.  As a result, the Foundation's interests in the two contexts are likewise identical and derive from the very agreements that Defendants seek to terminate.  Just as its status of beneficial owner gives it standing to sue for

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   copyright infringement, that same status gives the Foundation standing to challenge

2   the attempted termination of the agreements under which it obtained its beneficial

3   ownership.  There is no logical or legal difference between the two contexts, and

4   thus the rationale of §501(b) dictates that the Foundation has standing to pursue

5   these claims.

6       Second, in evaluating whether prudential standing exists, courts will inquire

7   whether a party can be said to be within the "zone of interest" protected by the

8   statute unless Congress has abrogated this requirement.  In this case, Congress has

9   abrogated this requirement, and even if the Court holds that it has not, the

10  Foundation is within the "zone of interest" of the termination provisions of the

11  Copyright Act.

12      Congress's abrogation of this requirement is evidenced by the fact that in

13  enacting the termination provisions in the Copyright Act, it delegated to the

14  Copyright Office the duty to prescribe the content of the terminations, how the

15  terminations should be served, and the effect thereof.  In doing so, the Copyright

16  Office enacted a provision that explicitly provides that "any party" (i.e., not just

17  grantees) can challenge the "legal and formal requirements for issuing a valid

18  notice" in "a court of competent jurisdiction," (i.e., federal court) notwithstanding

19  recordation in the Copyright Office.[1]

20      Moreover, the Foundation is a party whose interests the termination

21  provisions of the Copyright Act were designed to address.  Under the alternative

22  theories advanced by the Foundation in its declaratory relief claim, <u>Ray Charles</u>

23  was a party to the original agreements that assigned the copyrights in the musical

24  compositions to Progressive Music Publishing Co., ("Progressive"), and <u>Ray</u>

25  <u>Charles</u> was also a party to the 1980 Agreement that renegotiated and superseded

26  the original assignments.  In return for these assignments <u>Ray Charles</u> received

---

[1] Such challenges could only be made in the federal courts as the Copyright Office offers no format for such legal challenges or other disputes under the Copyright Act as a whole.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

royalties.  It is undisputed that the Foundation is Ray Charles's legal heir—indeed, since his death in 2004 and continuing to the present, the Foundation has been properly receiving Ray Charles's share of the royalties.

In addition, the Foundation's current complaint already alleges facts sufficient to sustain its alternative theory that the works are not works made for hire.  In its current complaint, the Foundation alleges that it is the successor to Ray Charles (Complaint ¶40), that Ray Charles wrote the songs that are the subject of Defendants' termination notices (Complaint ¶26), and that Ray Charles assigned the copyrights pursuant to single songwriter agreements in exchange for the right to receive royalties (Complaint ¶27).  Because the Foundation, as a beneficial owner, falls within the zone of interest of the termination provisions of the Copyright Act, it has standing to bring its declaratory relief action.

Under these factual allegations, the Foundation seeks a judicial declaration that a subsequent agreement entered into between Ray Charles and Rightsong (Progressive's then successor) in 1980, superseded and replaced the underlying single songwriter agreements that Defendants seek to terminate (Complaint ¶43(c)).  Alternatively, the Foundation seeks a declaration as to the effective dates of the terminations in light of the multiple termination notices served by Defendants and the fact that some of these terminations are for unpublished songs whose periods for termination are different than those for published songs (Complaint ¶¶43(d), (e) & (f)).

Thus, the Foundation believes that it has already sufficiently alleged facts to support its non-work for hire theory.  Nevertheless, if requested by the Court, the Foundation could supplement these factual assertions in an amended complaint completely consistent with Rule 11.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

## II.

## THE FOUNDATION HAS STANDING TO CHALLENGE THE TERMINATIONS

This Court stated in its September 25, 2012, order that "[i]f the works were not works made for hire and the Foundation were receiving royalties from simple assignments, it would be a 'beneficial owner' in the copyrights and would have standing to assert an infringement claim." Nevertheless the Court expressed doubt that the Foundation has standing to challenge the terminations because it is not a "grantee" of an "exclusive or nonexclusive grant of a transfer or license," under the termination provisions of the Copyright Act. *See* 17 U.S.C. §§304(c) and 203(a). According to this reasoning, the Court appears to be seeking to apply a standing requirement to the termination provisions that is in direct conflict with the standing requirement contained in 17 U.S.C. §501(b). Under the accepted canons of statutory construction, the Court cannot supplement congressional silence (it is undisputed that Congress has not legislated standing with specific reference to terminations), in a manner that is contrary to Congress's expressed intent in a different provision of the same statute.

"Statutory construction … is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme – because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Savings Ass'n v. Timbers of Inwood Forest Associates* , 484 U.S. 365, 371 (1988*); see also United States v. Boisdore Heirs*, 49 U.S. (8 How.) 113, 122 (1850) ("In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.")

"An inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1  intent." *Burns v. United States*, 501 U.S. 129, 136 (1991). "Congress … does not

2  alter the fundamental details of a regulatory scheme in vague terms or ancillary

3  provisions – it does not . . . hide elephants in mouseholes." *Whitman v. American*

4  *Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001); *see also MCI Telecommunications*

5  *Corp. v. AT&T*, 512 U.S. 218, 231 (1994) (conferral of authority to "modify" rates

6  was not a cryptic conferral of authority to make filing of rates voluntary); *Director*

7  *of Revenue of Mo. v. CoBank, ACB*, 531 U.S. 316, 323 (2001) ("it would be

8  surprising, indeed" if Congress had effected a "radical" change in the law "sub

9  silentio" via "technical and conforming amendments").

10      "Standing to sue under the Copyright Act of 1976 is governed by 17 U.S.C.

11  Section 501(b)." *Althin CD Medical, Inc. v. West Suburban Kidney Center, S.C.*,

12  837 F. Supp. 827, 842 (N.D. Ill. 1994) (addressing a claim for infringement).  In

13  conferring standing on a beneficial owner under section 501(b), Congress made

14  clear that "a 'beneficial owner' for this purpose would include, for example, an

15  author who had parted with legal title to the copyright in exchange for percentage

16  royalties based on sales or license fees." *Silvers v. Sony Pictures Entm't*, 402 F.3d

17  881, 885-6 (9th Cir. 2005) (stating that "Copyright is a creature of statute, so we

18  will not lightly insert common law principles that Congress has left out,")  quoting

19  H.R. Rep. No. 94-1476 at 159.

20      Congress has been silent on standing to challenge terminations.  As

21  mentioned above, the only provision contained within the entire Copyright Act

22  pertaining to standing is §501(b) which confers standing to the Foundation to

23  pursue a copyright infringement claim *on exactly the same songs and pursuant to*

24  *the very agreements* that are the subject of Defendants' termination notices.

25  Indeed, the Foundation could file an action today for copyright infringement of

26  those songs.

27      It bears repeating: "[a]n inference drawn from congressional silence certainly

28  cannot be credited when it is contrary to all other textual and contextual evidence of

1   congressional intent." *Burns*, 501 U.S. at 136.  The evidence of textual and

2   congressional intent shows that when Congress spoke about standing requirements

3   under the Copyright Act, it chose to grant plaintiffs in the Foundation's position,

4   standing to sue for infringement.  *At the same time* that Congress enacted this

5   standing requirement, it also enacted the termination of transfer provisions.

6   Congress could have limited its expressed standing requirements under the

7   Copyright Act when it came to challenging terminations, but it chose not to.  To

8   deny the Foundation standing to challenge termination of transfers that directly

9   affect it would be akin to denying it standing to challenge an infringement that

10  directly affects it (a position that Congress has explicitly rejected).  Therefore the

11  inference from congressional silence that the Foundation lacks standing to

12  challenge the terminations cannot be credited because it is contrary to other

13  expressed textual and contextual evidence of its intent.  The fact that the

14  termination provisions are not explicitly remedial in nature should be of no legal

15  consequence.  That is because if the Court were to require that the provisions be

16  remedial to satisfy standing requirements, then neither the party serving the notices

17  of termination, nor the grantee would possess standing to litigate issues concerning

18  the effectiveness of the terminations.  In light of the numerous cases filed by either

19  the party seeking to terminate or the grantee, redress under the termination

20  provisions is available.  *See e.g. Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036,

21  1041 (9th Cir. 2005) (statutory heir filing declaratory relief action under

22  termination provision); *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 981 (9th

23  Cir. 2008) (grantee filing declaratory relief action under termination provision).  As

24  such, the Foundation has standing to challenge the validity of the termination

25  notices.

26          Moreover, the Foundation has met the prudential considerations for standing

27  (if these are even deemed to apply in this circumstance).  Generally, to establish

28  standing under Article III of the Constitution, "[a] plaintiff must allege personal

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1    injury fairly traceable to the defendant's allegedly wrongful conduct and likely to
2    be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984).
3    "Where it is arguable whether a plaintiff has suffered sufficient injury to satisfy
4    Article III, the Supreme Court has sometimes insisted as a matter of 'prudence' that
5    Congress make its intention clear before it will construe a statute to confer standing
6    on a particular plaintiff." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir.
7    2004). "Together, the constitutional and prudential components of standing ensure
8    that plaintiffs possess such a personal stake in the outcome of the controversy so as
9    to assure that concrete adverseness which sharpens the presentation of issues upon
10   which the court so largely depends for illumination of difficult constitutional
11   questions." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053,
12   1057 (9th Cir. 2004).

13            "Prudential standing requirements include ... the requirement that a
14   plaintiff's complaint fall within the zone of interests protected by the law invoked."
15   *Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002). "Essentially, the standing question ...
16   is whether the constitutional or statutory provision on which the claim rests
17   properly can be understood as granting persons in the plaintiff's position a right to
18   judicial relief. ... But so long as this requirement is satisfied, persons to whom
19   Congress has granted a right of action, *either expressly or by clear implication*, may
20   have standing to seek relief on the basis of the legal rights and interests or other. ...
21   For purposes of ruling on a motion to dismiss for want of standing, both the trial
22   court and reviewing courts must accept as true all material allegations of the
23   complaint, and must construe the complaint in favor of the complaining party."
24   *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

25            "Prudential standing is satisfied when the injury asserted by a plaintiff
26   arguably falls within the zone of interests to be protected or regulated by the statute
27   in question." *FEC v. Akins*, 524 U.S. 11, 20 (1998) (looking to whether the alleged
28   injury "is injury of a kind that [the statute] seeks to redress.")  The zone of interest

1    test is "not meant to be particularly demanding." *Clarke v. Securities Indus. Ass'n*,

2    479 U.S. 388, 299 (1987).  In addressing the zone of interest test, the Ninth Circuit

3    has repeatedly stated: "[p]rudential standing is satisfied unless the party's interests

4    are so marginally related to or inconsistent with the purposes implicit in the statute

5    that it cannot reasonably be assumed that Congress intended to permit the suit."

6    *Thinket Ink Info. Res., Inc.*, 368 F.3d at 1059 (quoting *Ocean Advocates v. United*

7    *Stated Army Corps of Eng'rs*, 361 F. 3d 1108, 1121 (9th Cir. 2004)).

8            The threshold inquiry in a zone of interest analysis is whether Congress, in

9    formulating the relevant statutory provision granting a private right of action,

10   "negate[d] the zone of interest test." *Bennett v. Spear*, 520 U.S. 154, 164 (1997)

11   ("*Bennett*").  As articulated in *Bennett*, "Congress legislates against the background

12   of our prudential standing, which applies unless it is expressly negated … (or,

13   perhaps more accurately [stated], expands the zone of interest)." *Id.* at 163-64.  In

14   *Bennett*, the Supreme Court began its zone of interest analysis by determining that

15   the provision of the Endangered Species Act ("ESA") allowing for a private right of

16   action (16 U.S.C. Section 1540(g)) negated the zone of interest test (i.e. expanded

17   the zone of interest). *Id.* at 164.  The Supreme Court noted that the ESA contained

18   a provision, in a separate part of the statute that was not directly at issue in that

19   case, which stated that "any person may commence a civil suit." *Id.*  The Court

20   specified that this language operated to expand the category of people entitled to

21   have standing to sue under the ESA. *Id.*

22           Thus, the initial inquiry is whether the zone of interest test even applies in

23   this matter.  Under *Bennett*, this inquiry begins by looking to the sole provision of

24   the Copyright Act that confers standing to bring a private right of action, 17 U.S.C.

25   §501(b).  As stated above, §501(b) confers standing on "[t]he legal or beneficial

26   owner of an exclusive right under a copyright."  Therefore, it is likely that by

27   enacting a specific standing provision in the statute, Congress intended to negate

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1  the zone of interest test (i.e. expand the zone of interest) with respect to beneficial

2  owners who are granted standing in §501(b).

3      This conclusion is bolstered by the regulations enacted by the Copyright

4  Office pursuant to Congress's mandate under §§ 304(c) and 203(a).  Sections

5  304(c)(4) and 203(a)(4) both require recordation of termination notices with the

6  Copyright Office and for the Copyright Office to prescribe the form and manner of

7  how this should occur, and the effect thereof.  The Copyright Office has adhered to

8  its obligations by promulgating 37 C.F.R. §201.10, which delineates the contents

9  and procedures required for a termination notice to take effect.  Throughout this

10  regulation, the Copyright Office refers to the parties involved such as "author," and,

11  most importantly, "grantee."  *See e.g.* 37 C.F.R. §§201.10(b)(1)(ii), (b)(2)(ii),

12  (d)(1), (d)(2)(i), (d)(2)(ii).  Notably, however, one of the final provisions of this

13  subsection of the regulation provides as follows:  "… [T]he fact that the Office has

14  recorded the [termination] notice does not mean that it is otherwise sufficient under

15  the law. Recordation of a notice of termination by the Copyright Office is without

16  prejudice *to any party* claiming that the legal and formal requirements for issuing a

17  valid notice have not been met, including before a court of competent jurisdiction."

18  37 C.F.R. §201.10(f)(6).  By using the words "any party" rather than "grantee" as

19  used throughout the rest of this regulation, the Copyright Office is explicitly not

20  limiting such challenges to "grantees" because it understands that there are parties

21  affected by terminations who are not "grantees," such as royalty recipients who in

22  order to protect their interests might want to assert a claim "that the legal and

23  formal requirements for issuing a valid notice have not been met."  Indeed, the

24  Copyright Office contemplates that such challenge by "any party" takes place

25  "before a court of competent jurisdiction," i.e., the Foundation's standing is proper

26  before this Court.

27      Indeed, the Foundation is attempting to do exactly what is contemplated by

28  37 C.F.R. §201.10(f)(6): it is claiming that the "legal requirements" have not been

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   met by operation of the 1980 Agreement, and it is claiming that the "formal

2   requirements" have not been met because of the multiple termination notices and

3   Defendants' incorrect calculation of time relating to the unpublished songs. Thus,

4   since, as explained above, congressional silence as to standing within the

5   termination context cannot be interpreted in a way contrary to the standing

6   provisions vis-à-vis infringement, and the regulations enacted pursuant to the

7   congressional mandate contained within the *termination provisions themselves*

8   explicitly state that "any party" (i.e. not just "grantees") can challenge the legal and

9   formal foundations of termination notices, the Foundation facially has standing.

10           Even if the Court determines that Congress did not expressly intend to negate

11   the zone of interest test for beneficial owners by way of 17 U.S.C. §501(b), the

12   Court should nevertheless determine that the Foundation is within the zone of

13   interest of the substantive portions of Sections 203(a) and 304(c) which involve the

14   terminations of agreements to which the Foundation is a party.  In determining

15   whether a plaintiff is in the zone of interest of a substantive portion of a statute, a

16   court must look to the substantive statutory provisions that serve as the gravamen of

17   the complaint. *Bennett*, 520 U.S. at 175 (and cases cited therein). "[T]he plaintiff

18   must establish that the injury he complains of falls within the zone of interest

19   sought to be protected by the statutory provision whose violation forms the legal

20   basis for his complaint." *Id.* at 176.  However, for a plaintiff to be in that zone of

21   interest:

22           "there does not have to be an indication of congressional purpose to

23           benefit the would-be plaintiff.  The proper inquiry is simply whether

24           the interest sought to be protected by the complainant is arguably

25           within the zone of interests to be protected by the statute.  Hence in

26           applying the zone of interests test, we do not ask whether, in enacting

27           the statutory provision at issue, Congress specifically intended to

28           benefit the plaintiff.  Instead, we first discern the interests arguably to

1    be protected by the statutory provision at issue; we then inquire

2    whether the plaintiff's interests affected by the [] action in question

3    are among them." *Nat'l Credit Union Admin. v. First Nat'l Bank and*

4    *Trust Co.*, 522 U.S. 479, 492 (1998) superseded by statute on other

5    grounds at 12 U.S.C. Section 1759(b).

6        To summarize, to meet the "not particularly demanding" requirements under

7    the zone of interest test, all the Foundation needs to show is that its "interests" are

8    "arguably" affected by the statutory provision under which it is seeking redress.

9    Most importantly, as stated above, the Foundation does not need to show that it is

10   explicitly contemplated as a beneficiary of the statutory provision, i.e., zone of

11   interest does not equate with specific mention in the statute.  In other words, to be

12   in the zone of interest of the termination provisions of the Copyright Act, the

13   Foundation need be neither the grantor (or his successor) nor the grantee (or its

14   successor).

15       It is certainly beyond arguable (as well as absolutely clear), that the

16   Foundation's interests are within the zone of interest of the termination provisions

17   of §§203(a) and 304(c).  Ray Charles was the original copyright owner and author

18   of the songs (as reflected in the pertinent copyright registrations), was a party to

19   every single agreement that is the subject of a termination notice being challenged

20   in this action, and was the copyright claimant for all the renewal registrations of the

21   songs.  The Foundation, as the legal heir of Ray Charles, is thus the copyright

22   claimant for all the renewal registrations of the songs and receives royalties from

23   the assignments that Ray Charles originally made in the 1950s and 1960s, and from

24   the renegotiation of such assignments contained in the 1980 Agreement.  This is the

25   identical structural framework that gives standing to the Foundation to sue for

26   copyright infringement as a beneficial owner.

27       The grantee's interest being protected by the statutes is its ability to continue

28   to receive royalties from the assignments in the event that the purported termination

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1    notices failed to comply with the required statutory conditions or that the notices

2    were sent by a party not authorized to exercise termination rights.  In other words,

3    both the legal owner and "beneficial owner" of the copyrights subject to the

4    termination notices would continue to receive their respective share of certain

5    revenues derived from the exploitation of the songs if Defendants failed in any way

6    to comply with the strict requirements outlined in §§203(a) and 304(c).  Thus, the

7    stringent conditions for termination under these provisions serve not only to protect

8    the interests of the grantee and legal owner (Warner/Chappell) but also to protect

9    the interests of the beneficial owner (the Foundation).

10         Moreover, the Foundation would have standing to assure that, in accord with

11   existing law, the terminations (if effective at all) do not affect foreign rights and

12   income therefrom that the Foundation currently receives, (*see e.g. Fred Ahlert*

13   *Music Corp. v. Warner/Chappell Music, Inc*. 155 F.3d 17, 20 (2nd Cir. 1998) and

14   *Siegel v. Warner Bros. Entertainment Inc.,* 542 F. Supp. 2d 1098, 1142 (C.D. Cal.

15   2008)), do not affect derivative works and income therefrom that the Foundation

16   currently receives, (*see e.g. Fred Ahlert*, 155 F.3d at 20 and *Mills Music Inc. v.*

17   *Snyder*, 469 U.S. 153, 167 (1985)), and do not affect rights that were never part of

18   the grant in the first place nor any income therefrom such as the writer's share of

19   performing royalties which the Foundation currently receives.  *See e.g. Spier Inc. v.*

20   *Bourne Co*., 953 F.2d 774, 778 (2nd Cir. 1992) and *Woods vs. Bourne Co.*, 60 F.3d

21   978, 988 (2nd Cr. 1995).

22         The Foundation's classification as a beneficial owner of the copyrights

23   subject to Defendants' termination notices does not evaporate simply because the

24   claim changes—i.e., the Foundation is the beneficial owner of the copyright in the

25   context of both copyright infringement and termination of transfers.  It would be

26   novel for the Court to deem that the Foundation is outside the zone of interest of the

27   termination provisions of the Copyright Act (which directly affect it as termination

28   of the songs will result in certain lost royalties) when Congress has determined that

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

the *very same agreements* which are the subject of the termination of transfer notices give the Foundation the right to sue for copyright infringement. This outcome would certainly turn on its head the notion that zone of interest requirement be "not particularly demanding." It would also negate the rule that the Foundation need not be specifically mentioned in the relevant statutory provision to be in that provision's zone of interest to meet the requirement for prudential standing.

**III.**

**THE FOUNDATION HAS ALLEGED, AND CAN ALLEGE MORE, FACTS TO SUPPORT ITS CLAIM THAT THE WORKS WERE NOT WORKS MADE FOR HIRE**

In its September 25, 2012, order that the Foundation provide it with factual allegations "to support a claim that the works were not works made for hire consistent with Rule 11," the Court noted that "the Foundation has failed to allege any facts to support its alternative theory that the works were not works made for hire." The Foundation believes it has already alleged the factual basis for its alternative theory and will highlight herein those aspects of the current Complaint that allege facts in support of the Foundation's alternate theory for Declaratory Relief. However, if the Court requests, the Foundation can supplement those factual allegations upon which its alternate theory for Declaratory Relief is based in an amended complaint.

Rule 11(b) requires, in pertinent part, that "(2) the claims, defenses and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and that] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation."

1    In *PAE Government Services., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858-59 (9th

2    Cir. 2007) ("*PAE*"), the Ninth Circuit stated "[a]t the time a complaint is filed, the

3    parties are often uncertain about the facts and the law; and yet, prompt filing is

4    encouraged and often required by a statute of limitations, laches, the need to

5    preserve evidence and other such concerns. In recognition of these uncertainties, we

6    do not require complaints to be verified, and we allow pleadings in the

7    alternative—even if the alternatives are mutually exclusive. . . . We do not call this

8    process sham pleading; we call it litigation."   Subsequently, district courts in the

9    Ninth Circuit have allowed for inconsistent factual allegations in a complaint. *See,*

10   *e.g., Nazir v. County of Los Angeles*, 2011 U.S. Dist. Lexis 26820, n.12 (C.D. Cal.

11   Mar. 2, 2011) ("Although these allegations appear to be inconsistent, inconsistent

12   factual allegations are not a basis for striking a complaint."); *see also Brocade*

13   *Communs. Sys. v. A10 Networks, Inc.*, 2011 U.S. Dist. Lexis 30227, *12 (N.D. Cal.

14   Mar. 23, 2011).  At the motion to dismiss stage, "the role of the Court is to examine

15   the [] complaint to see whether it contains 'sufficient factual matter, accepted as

16   true, to state a claim to relief that is plausible on its face.'" *Ryabyschchuk v.*

17   *Citibank (South Dakota) N.A.*, 2011 U.S. Dist. Lexis 136506, **9-10 (S.D. Cal.

18   Nov. 28, 2011) quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129. S. Ct. 1937, 1949

19   (2009).  If either of the two alternative sets of alleged facts are sufficient to state a

20   claim, Plaintiff's Complaint must withstand a motion brought under Federal Rule of

21   Civil Procedure 12(b)(6).  *See PAE*, 514 F.3d at 858-59. "Unless there is a showing

22   that the party acted in bad faith – a showing that can only be made after the party is

23   given an opportunity to respond under the procedures of Rule 11 – inconsistent

24   allegations are simply not a basis for striking [or dismissing] the pleading." *Id.* at

25   560.

26       If the works that are the subject of the termination notices are not deemed to

27   be works for hire, then the facts supporting the Foundation's alternative theory are

28   as follows:

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1    (1) Ray Charles wrote the songs at issue in this case (Complaint ¶26);

2    (2) Sometime after he wrote the songs he assigned his copyright in them to

3    Progressive in so-called single songwriter agreements entitled "Standard Uniform

4    Songwriters Contract" (the "Songwriters Contract") (the Songwriters Contract for

5    "I Got A Woman," which is the only one in the Foundation's possession, is

6    attached to the Ervin Declaration in Opposition to Defendants' SLAPP Motion, at

7    Exhibit L—for the Court's convenience it is reattached to this supplemental brief as

8    Exhibit 1) (Complaint ¶27);

9    (3) Under the terms of the Songwriters Contract for "I Got A Woman,"

10    Progressive was transferred the legal ownership of the copyright of the song.

11    According to the Songwriters Contract, in return for the assignment of copyright,

12    Ray Charles received: (a) a very small advance (such as one dollar) on his royalty

13    payments; (b) a royalty for every sale of sheet music of the song in the United

14    States and Canada; (c) a royalty for every sale of an arrangement of the song in the

15    United States and Canada; and (d) a royalty for every sale of the associated rights of

16    the song in the United States and Canada, (such as mechanical rights (the right to

17    record the song) and motion picture synchronization and television rights (the right

18    to use the song in a movie or a television production)).  (Items (b)-(d) above shall

19    be referred to as the "Domestic Royalties.")  In addition to these Domestic

20    Royalties, still pursuant to the same Songwriters Contract, Ray Charles also

21    received a royalty for every sale of the song outside of the United States and

22    Canada (Complaint ¶27);

23    (4) After Ray Charles composed a song, a registration would be filed with the

24    Copyright Office indicating Ray Charles as the author *and copyright claimant*

25    (copies of the renewal registrations for "I Got a Woman" (aka "I Got a Sweetie),

26    are attached to the Hazzard Declaration in Opposition to Motion to Dismiss, at

27    Exhibit 1—for the Court's convenience it is reattached to this supplemental brief as

28    Exhibit 2) (Complaint ¶28).

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   It is the sum of these allegations contained in the Complaint upon which the

2   Foundation's alternative theories for Declaratory Relief are based.  Specifically,

3   based on these allegations, the Foundation contends that when Ray Charles and

4   Rightsong (Progressive's then successor) entered into an agreement in 1980 (as the

5   original 28-year copyright term for some of the songs was about to expire) which

6   renegotiated and superseded the terms of all assignments of rights to his musical

7   compositions that Ray Charles had made to Progressive prior to that date, that such

8   renegotiation operates to eliminate any right to termination that Defendants might

9   possess.  Alternatively, and still based on the allegations set forth above, the 1980

10  Agreement operates to change the effective date of the terminations as to both the

11  published and unpublished songs contained therein and a judicial declaration is

12  needed to determine what dates are the proper effective dates given the multiple

13  terminations per song served by Defendants, and their failure to recognize that

14  unpublished songs have different termination periods to published songs. *See* 17

15  U.S.C. §203(a)(3).

16  Indeed, this version of the <u>facts</u> *is exactly the version that is relied upon by*

17  *Defendants* in support of their alleged right to serve termination notices.  For

18  example, in their termination notices, Defendants had to identify the work (e.g. the

19  song "A Fool for You,") its author (Ray Charles), and the assignment which they

20  were seeking to terminate including the identity of the assignor (which had to be

21  Ray Charles) (copies of the termination notices are attached to the Hazzard

22  Declaration in Opposition to the SLAPP Motion, at Exhibit F—for the Court's

23  convenience one of them (they are all very similar) is reattached to this

24  supplemental brief as Exhibit 3).  <u>In other words, if Ray Charles had not been the</u>

25  <u>original assignor of these musical compositions, then Defendants would not have</u>

26  <u>any termination rights under any circumstances.</u>  Therefore, these allegations more

27  than satisfy the Rule 11(b)(3) standards that require allegations to have evidentiary

28  support.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

## IV.

## REQUEST FOR ORAL ARGUMENT

Given that the Court's ruling on these substantive issues could be dispositive of the Foundation's Declaratory Relief claim, and in light of the fact that the issue of whether a royalty recipient who is also a beneficial owner of the copyright under §501(b) has standing to challenge a termination of transfer that directly affects certain of such royalties appears to be one of first impression in the nation, the Foundation respectfully requests that Court entertain oral argument on the issues for which it requested supplemental briefing.

## V.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss for lack of standing. In the alternative, the Court should grant leave for the Foundation to file an amended complaint.


Dated: October 2, 2012


**ROBINS, KAPLAN, MILLER & CIRESI LLP**


By: _____
Yakub Hazzard
Rex D. Glensy

Attorneys for Plaintiff
The Ray Charles Foundation

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

Exhibit 1

# progressive music publishing co., inc.

234 west 56 street
new york 19 n y
tel. plaza 7-6156

## STANDARD UNIFORM SONGWRITERS CONTRACT

AGREEMENT made this _18th_ day of _November_, 195_4_ between

Progressive Music Publishing Company, Inc. (hereinafter called "Publisher"), and

_Ray Charles_

jointly and/or severally, (hereinafter called "Writer(s)");

WITNESSETH:

1. The Writer(s) hereby sells, assigns, transfers and sets over unto the Publisher, its successors and assigns, a certain heretofore unpublished original musical composition, written and/or composed by the above named Writer(s) now entitled

_I Got A Woman_

including the title, words and music thereof, the worldwide copyright thereof and the right to secure copyright therein throughout the entire world and to have and to hold the said copyright together with all of their right, title and interest, both legal and equitable therein, including but not limited to the sole and exclusive worldwide publication, mechanical, electrical reproducing, transcription and motion picture rights and the right of public performance by radio, television and other means and all other rights now known or hereafter to come into existence, subject to the terms of this agreement.

2. The Writer(s) represent that they are the sole authors and composers of the music and lyrics constituting the musical composition; that said music and lyrics are their own original work and creation; and that neither said music or lyrics nor any part thereof are a copy of any other copyrighted work. The Writer(s) further represent that they have not sold, assigned, leased, licensed or in any other way disposed of or encumbered the rights herein granted to the Publisher and that they have the right to make this agreement.

3. In consideration for and in full payment of the aforesaid sale, the Publisher hereby agrees to pay jointly to the Writer(s) with respect to the musical composition as follows:

   (a) An advance of $ _1.00_ in hand paid, receipt of which is hereby acknowledged, which sum shall be deductible from any payments hereafter becoming due the Writer(s) under this agreement.

   (b) ( _3_ ¢) cents per copy for each and every regular pianoforte copy thereof, and ( _3_ ¢) cents per copy for each and every dance orchestration thereof published and sold by and paid for to the Publisher in the United States and Canada.

   (c) (10%) percent of the retail selling price upon each and every printed copy of each and every other arrangement and edition thereof published and sold by and paid for to the Publisher in the United States and Canada, except that in the event that the said work shall be used or caused to be used in whole or in part in conjunction with one or more other musical compositions in a folio or album, the writer(s) shall be entitled to receive that proportion of said (10%) percent which the musical composition shall bear to the total number of musical compositions contained in such folio or album.

   (d) (50%) percent of any and all net sums actually received by the Publisher from the mechanical rights, motion picture synchronization and television rights and all from other rights therein (including the use thereof in song lyric folios or magazines) in the United States and Canada, (except that the writer(s) Composers, Authors and Publishers or from any other performance right society which allocates and pays a share of performance fees directly to writer(s).)

   (e) (50%) percent of any and all net sums actually received by the Publisher from sales and uses of the musical composition in countries outside of the United States and Canada.

33087

Exhibit _1_ Page 18

4. The Publisher shall not be required to pay any royalties on professional or complimentary copies or any copies which are distributed gratuitously — performing artists or orchestra leaders or for advertising or exploitation purposes.

5. The Publisher agrees that within 45 days after Aug. 15th, Nov. 15th, Feb. 15th and May 15th of each year hereafter during which revenues derived hereunder are received by the Publisher, it will prepare and furnish to the Writer(s) statements showing any royalties which may have accrued to the Composers hereunder, and each such statement shall be accompanied by a check or checks in payment of any and all sums shown to be due thereby.

6. It is understood and agreed by and between all of the parties hereto that all sums hereunder payable jointly to the Writer(s) shall be divided amongst them respectively as follows:

Name ___Ray Charles___    Share ___100 %___

7. The Writer(s) or his representative may appoint a certified public accountant who shall at any time during usual business hours have access to all records of the Publisher relating to the said composition for the purpose of verifying royalty statements tendered or which are delinquent under the terms hereof.

8. (a) The Publisher shall, upon written demand of the Writer(s) or his (their) representative, cause the agent, trustee or administrator referred to above, to furnish to the Writer(s) or his (their) representative, statements showing in detail all licenses granted, uses had and payments made in connection with said composition, which licenses or permits were granted, or payments were received, by or through said agent, trustee or administrator, and to permit the Writer(s) or his (their) representative to inspect at the place of business of such agent, trustee or administrator all books, records and documents of the agent, trustee or administrator relating thereto.

(b) The Publisher shall from time to time, upon written demand of the Writer(s) or his (their) representative, furnish to the Writer(s) or his (their) representative, statements showing in detail all licenses granted, uses had and payments made therefor in connection with said composition (other than licenses, uses and payments for commercial phonograph records and music rolls) for which licenses or permits were granted or payments received by the Publisher without the intervention of said agent, trustee or administrator, and to permit the Writer(s) or his (their) representative to inspect at the place of business of the Publisher, all books, records and documents relating to said composition and all licenses granted, uses had and payments made therefor, such right of inspection to include, but not by way of limitation, the right to examine all original accountings and records relating to uses and payments by manufacturers of commercial phonograph records and music rolls. Nothing in this paragraph contained, furthermore, shall be deemed or construed to relieve the Publisher of its obligation to pay royalties on the use of said composition on commercial phonograph records and music rolls or the obligation to include a statement of such royalties in the periodical royalty statements to be rendered to the Writer(s).

9. In the event that the Publisher shall fail or refuse, within sixty days after written demand, to furnish said statements, or cause the same to be furnished, or to make available or cause to be made available to the Writer(s) or his (their) representative all of such books, records or documents as aforesaid, or, in the event that the Publisher shall fail to make the payment of any royalties due within thirty days after written demand therefor, then the Writer(s) shall have the option, to be exercised upon ten days' written notice, to terminate this agreement.

Upon such termination, all rights of the Publisher, of any and every nature, in and to said composition, shall cease and terminate and the said rights, including but not limited to the right to secure copyright and/or any copyright theretofore secured by the Publisher, shall revert to and become the property of the Writer(s) and shall be assigned to him (them). The Publisher agrees that it will execute any and all assignments or other documents which may be necessary or proper to vest the said rights in the Writer(s).

10. Written demands and notices provided for in Paragraphs 8 and 9 hereof shall be sent to the Publisher by registered mail.

11. The Writer(s) hereby authorize and empower the Publisher to renew, pursuant to law, for and in the name of the Writer(s), if living, the copyright of the said musical composition, and to execute and deliver in the name of the Writer(s) a formal assignment of such renewal copyright to the Publisher, for its own use and benefit subject to the payment of the same royalties as hereinbefore provided.

12. The Writer(s) hereby consent to the assignment of this contract or the said musical composition or the copyright thereof or any and all of the rights therein secured by the Publisher to any person, firm or corporation whatsoever, subject, however, to the payment of the royalties herein specified.

13. Any legal action brought by the Publisher against any alleged infringer of said composition shall be initiated and prosecuted at his sole expense, and of any recovery made by him as a result thereof, after deduction of the expense of the litigation, a sum equal to fifty percent shall be divided as agreed among the Writer(s) of the said composition.

(a) If a claim is presented against the Publisher alleging that the said composition is an infringement upon some other, and because thereof the Publisher is jeopardized, he shall thereupon serve written notice upon the Writer(s), containing the full details of such claim and thereafter until the claim has been adjudicated or settled shall pay any monies coming due the Writer(s) hereunder in escrow to any bank or trust company to be held pending the outcome of such claim, provided however, if no suit be filed within twelve months ... written ... the ... of the adverse claim, the said bank or trust compa ... release and pa ... the Wr ... all su ... any interest which may have been ... thereof ... Such ... cha ... without ... to the rights of the Publisher in event of a subsequent adverse ...

Exhibit 1 Page 19

... ... ... the service of summons in restit (or infringement filed against the Publisher in respect of the said composition, any and all payments hereunder there ... coming due the Writer(s) shall be paid by the Publis ... tru ... any bank or trust company until the ... is ... n finally adjudicated and then be disbursed ... ding ... unless the Writer(s) shall elect to fur ... a s... ... able bond in the sum of such payments, in which event the sums due shall be paid to him ...

14.   The parties hereto hereby agree to submit to arbitration under the rules of the American Arbitration Association, and pursuant to the New York Arbitration Law any differences arising in relation to the payment of royalties due or in default hereunder, and hereby agree individually and jointly to abide by and perform any award rendered by the arbitration and that a judgment of the Supreme Court of the State of New York may be entered upon such award.

15.   This agreement is binding upon the parties hereto and their respective successors in interest.

16.   *Two* identical copies hereof are executed by the parties, the original copy of which shall remain in the possession of the Publisher, the duplicate in possession of the Writer (s)

IN WITNESS WHEREOF the Writer(s) have hereunto set their hands and seals and the Publisher has caused these presents to be signed by a duly authorized officer the day and year first above written.

Witness: _____   Writer____X RAY CHARLES_____(L.S.)

_____   Address_____

Witness: _____   Writer_____(L.S.)

_____   Address_____

Witness _____   Writer_____(L.S.)

_____   Address_____

Witness: _____   Writer_____(L.S.)

_____   Address_____

Witness. _____   PUBLISHER: Progressive Music Publishing Company, Inc.

_____   By_____

Address: 234 West 56th Street, New York 19, N. Y.

33987

Exhibit 1 Page 20

Exhibit 2

```
Type of Work:        Music

Registration Number / Date:
                     RE0000155199 / 1983-01-17
                     Renewal registration for: EU0000388054 / 1955-02-28

Title:               I got a sweetie.  Words and music: Ray Charles.

Notes:               Formerly entitled, I got a woman.

Copyright Claimant:
                     Ray Charles (A)

Basis of Claim:      New Matter: rev. lyrics & changes.

Variant title:       I got a sweetie.

Other Title:         I got a woman.

Names:               Charles, Ray
```

============================================================================

Exhibit 2  Page 21

7/10/2012 3:31 PM

```
Type of Work:        Music

Registration Number / Date:
                     RE0000283984 / 1986-01-30
                     Renewal registration for: EP0000170962 / 1958-07-25

Title:               I got a sweetie.  w & m Ray Charles.

Copyright Claimant:
                     Ray Charles (A)

Variant title:       I got a sweetie.

Other Title:         I got a woman.

Names:               Charles, Ray
```

Exhibit 3

## NOTICE OF TERMINATION OF TRANSFER
## COVERING EXTENDED RENEWAL TERM

### "A Fool For You"

To:

Rightsong Music, Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Rightsong Music Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Unichappell Music Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

WMG Acquisition Corp.
75 Rockefeller Plaza
New York, NY  10019-6908

WMG Acquisition Corp.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Warner Music Group Corp.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Warrier/Chappell Music, Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Chappell Music Company, Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Hill and Range Songs
c/o Alfred Publishing Company
P.O. Box 10003
Van Nuys, CA 91410

Warner Music Discovery Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Broadcast Music, Inc.
10 Music Square East
Nashville, TN 37203

Bank of America, N.A.
CT Corporation System
150 Fayetteville Street, Box 1011
Raleigh, NC 27601

Exhibit 3  Page 23

WMG Acquisition Holdings LLC
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

W. M. G. Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

WMG Holdings Corp.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

WMG Music, LLC
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

WMG Group Holdings Limited
c/o Agents and Corporations, Inc.
1201 Orange Street, Suite 600
One Commerce Center
Wilmington, DE 19801

WMG North America, Inc.
c/o The Prentice-Hall Corporation
System, Inc.
2711 Centerville Road Suite 400
Wilmington, DE 19808

Warner Music Enterprises Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Warner Music Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Warner Music Holdings Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Warner Music Distribution LLC
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Warner Music Manufacturing Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Warner Music Multimedia Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Warner Music Productions Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Warner/Chappell Music (Services), Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

2

Exhibit 3  Page 24

PLEASE TAKE NOTICE that pursuant to Section 304(c) of the United States Copyright Act (17 U.S.C. § 304(c)) and the regulations issued thereunder by the Register of Copyrights, 37 C.F.R. § 201.10, the undersigned Raenee Robinson, Ray Charles Robinson, Jr., Sheila Robinson, David Robinson, Rev. Robert F. Robinson, Robyn Moffett and Reatha Butler, being the persons who own an interest sufficient to terminate transfers pursuant to said statutory provisions, hereby terminate all pre-January 1, 1978 grants of a transfer or license of the renewal copyright(s) in and to the musical composition entitled "A Fool For You," that were made by Ray Charles Robinson (a.k.a. Ray Charles); and the undersigned set forth in connection therewith the following[1]:

1.     The names and addresses of the grantees and/or successors in title whose rights are being terminated are as follows:  Rightsong Music, Inc., c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; Rightsong Music Inc., c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; Unichappell Music Inc., c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; WMG Acquisition Corp., 75 Rockefeller Plaza, New York, NY  10019-6908;  WMG Acquisition Corp., c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; Warner Music Group Corp., c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; Warner/Chappell Music, Inc., c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street,

---

[1] Nothing contained in this notice shall be construed to in any way limit or waive any right or remedy that the undersigned might have, at law or in equity, with respect to the subject matter hereof, all of which is hereby expressly reserved.

3

Exhibit 3  Page 25

Wilmington, DE 19801; Chappell Music Company, Inc., c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; Hill and Range Songs, c/o Alfred Publishing Company, P.O. Box 10003, Van Nuys, CA 91410; Warner Music Discovery Inc., c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; Broadcast Music, Inc., 10 Music Square East, Nashville TN 37203; Bank of America, N.A., CT Corporation System, 150 Fayetteville Street, Box 1011, Raleigh NC 27601; WMG Acquisition Holdings LLC, c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; W.M.G. Inc., c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; WMG Holdings Corp., c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; WMG Music, LLC, c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; WMG Group Holdings Limited, c/o Agents and Corporations, Inc., 1201 Orange Street, Suite 600, One Commerce Center, Wilmington, DE 19801; WMG North America, Inc., c/o The Prentice-Hall Corporation System, Inc., 2711 Centerville Road Suite 400, Wilmington, DE 19808; Warner Music Enterprises Inc., c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; Warner Music Inc., c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; Warner Music Holdings Inc., c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; Warner Music Distribution LLC, c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; Warner Music Manufacturing Inc., c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street,

4

Exhibit 3  Page 26

Wilmington, DE 19801; Warner Music Multimedia Inc., c/o The Corporation Trust Company; Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; Warner Music Productions Inc., c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; and Warner/Chappell Music (Services), Inc., c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.  Pursuant to 37 C.F.R. Section 201.10(d), service of this notice is being made on the aforesaid entities by first class mail.

2.     The work ("Work") to which this Notice of Termination applies was authored by Ray Charles Robinson (a.k.a. Ray Charles) and is identified as follows: The title of the original copyrighted work to which this Notice of Termination applies is "A Fool For You," along with all lyrics, scores, melodies, harmonies, motifs, and/or other elements appearing therein, for which copyright was secured on September 11, 1962, as a published musical composition, in the name of Progressive Music Publishing Co., listing Ray Charles as author, under Copyright Registration No. EP0000170969. Renewal for the Work was made on April 4, 1990, under Copyright Renewal Registration No. RE0000476468.[2]

3.     The grant(s) to which this Notice of Termination applies is (are) made in that certain Agreement, between Ray Charles Robinson (a.k.a. Ray Charles), on the

---

[2] This Notice of Termination applies to each and every work or derivative work which includes any lyrics, scores, melodies, harmonies, motifs, and/or other elements of or reasonably associated with the musical composition, "A Fool For You," and that was registered with the United States Copyright Office and/or published within the Termination time window, as defined by 17 U.S.C. § 304(c) and the effective date of this Notice of Termination.  Every reasonable effort has been made to find and list herein every such work.  Nevertheless, if any such work has been omitted, including any materials relating to and published prior to the date "A Fool For You" first secured statutory copyright, such omission is unintentional and involuntary, and this Notice of Termination also applies to each and every such omitted work.

5

Exhibit 3  Page 27

one hand, and Progressive Music Publishing Co., on the other hand, which was

recorded on February 15, 1962.[3]

    4.    The effective date of termination shall be September 12, 2018.

    5.    Ray Charles Robinson (a.k.a. Ray Charles) died on June 10, 2004.  He is

survived by his twelve children:  Raenee Robinson, Ray Charles Robinson, Jr., Sheila

Robinson, David Robinson, Rev. Robert F. Robinson, Reatha Butler, Alexandra

Bertrand, Vincent Kotchounian, Robyn Moffett, Evelyn Robinson, Ryan Corey Robinson

den Bok and Charles Wayne Hendricks.  Raenee Robinson, Ray Charles Robinson, Jr.,

Sheila Robinson, David Robinson, Rev. Robert F. Robinson, Reatha Butler, and Robyn

Moffett, who own and constitute more than one-half of author Ray Charles' termination

interest, are executing this Notice of Termination and constitute a majority of all of those

persons entitled to exercise the termination interest of Ray Charles Robinson as to the

grant(s) of the transfer(s) described hereinabove.  To the best knowledge and belief of

the undersigned, this Notice of Termination has been signed by all persons whose

signature is necessary to terminate said grant(s) under Section 304(c) of Title 17,

---

[3] This Notice of Termination shall also apply to any and all actual or alleged pre-January
1, 1978 exclusive or non-exclusive written grants of a transfer or license of the renewal
copyright(s) by Ray Charles, and/or by any other person defined in 17 U.S.C. §
304(a)(1)(C), and to any and all alleged pre-January 1, 1978 implied or express oral
grants of a transfer or license by Ray Charles, and/or by any other person defined in 17
U.S.C. § 304(a)(1)(C), of any copyright interest in "A Fool For You" and/or any lyrics,
scores melodies, harmonies, motifs, and/or other elements reasonably associated with
"A Fool For You."  Every reasonable effort has been made to find and list herein every
pre-January 1, 1978 grant of transfer or license of the renewal copyright to any "A Fool
For You" work by any person defined in 17 U.S.C. § 304(a)(1)(C).  Nevertheless, if any
such grant has been omitted, such omission is unintentional and involuntary, and this
Notice of Termination also applies to each and every such omitted grant.

6

Exhibit 3  Page 28

United States Code.

Dated: March 30, 2010

_____
Raenee Robinson
c/o Marc Toberoff, Esq.
Toberoff & Associates, P.C.
2049 Century Park East, Suite 2720
Los Angeles, CA 90067

_____
Ray Charles Robinson, Jr.
c/o Marc Toberoff, Esq.
Toberoff & Associates, P.C.
2049 Century Park East, Suite 2720
Los Angeles, CA 90067

_____
Sheila Robinson
c/o Marc Toberoff, Esq.
Toberoff & Associates, P.C.
2049 Century Park East, Suite 2720
Los Angeles, CA 90067

_____
David Robinson
c/o Marc Toberoff, Esq.
Toberoff & Associates, P.C.
2049 Century Park East, Suite 2720
Los Angeles, CA 90067

_____
Rev. Robert F. Robinson
c/o Marc Toberoff, Esq.
Toberoff & Associates, P.C.
2049 Century Park East, Suite 2720
Los Angeles, CA 90067

_____
Robyn Moffett
c/o Marc Toberoff, Esq.
Toberoff & Associates, P.C.
2049 Century Park East, Suite 2720
Los Angeles, CA 90067

_____
Reatha Butler
c/o Marc Toberoff, Esq.
Toberoff & Associates, P.C.
2049 Century Park East, Suite 2720
Los Angeles, CA 90067

7

Exhibit 3  Page 29

**CERTIFICATE OF INVESTIGATION**

I hereby certify that before serving the foregoing document described as NOTICE

OF TERMINATION OF TRANSFER COVERING EXTENDED RENEWAL TERM, and

pursuant to 37 C.F.R. section 201.10(d), I caused a reasonable investigation to be

made on behalf of my clients as to the current ownership of the rights being terminated,

by commissioning a search of U.S. copyright records, including a search of the records

in the U.S. Copyright Office.

I declare under penalty of perjury that the foregoing is true and correct.  Executed

this 29ᵗʰ day of March, 2010, at Los Angeles, California.

Marc Toberoff, Esq.,
Toberoff & Associates, P.C.
2049 Century Park East, Suite 2720
Los Angeles, CA  90067

Counsel for Raenee Robinson, Ray Charles
Robinson, Jr., Sheila Robinson, David
Robinson, Rev. Robert F. Robinson, Robyn
Moffett and Reatha Butler

8

Exhibit 3  Page 30

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the foregoing document described as

NOTICE OF TERMINATION OF TRANSFER COVERING EXTENDED RENEWAL

TERM to be served this 30th day of March, 2010, by First Class Mail, postage prepaid,

upon the following:

To:

Rightsong Music, Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Rightsong Music Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Unichappell Music Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

WMG Acquisition Corp.
75 Rockefeller Plaza
New York, NY 10019-6908

WMG Acquisition Corp.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Warner Music Group Corp.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Warner/Chappell Music, Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Chappell Music Company, Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Hill and Range Songs
c/o Alfred Publishing Company
P.O. Box 10003
Van Nuys, CA 91410

Warner Music Discovery Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

9

Exhibit 3  Page 31

Broadcast Music, Inc.
10 Music Square East
Nashville, TN 37203

Bank of America, N.A.
CT Corporation System
150 Fayetteville Street, Box 1011
Raleigh, NC 27601

WMG Acquisition Holdings LLC
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

W. M. G. Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

WMG Holdings Corp.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

WMG Music, LLC
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

WMG Group Holdings Limited
c/o Agents and Corporations, Inc.
Corporation Trust Center
1201 Orange Street, Suite 600 One
Commerce Center
Wilmington, DE 19801

WMG North America, Inc.
c/o The Prentice-Hall Corporation
System, Inc.
2711 Centerville Road Suite 400
Wilmington, DE 19808

Warner Music Enterprises Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Warner Music Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Warner Music Holdings Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Warner Music Distribution LLC
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Warner Music Manufacturing Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Warner Music Multimedia Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Exhibit 3  Page 32

Warner Music Productions Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Warner/Chappell Music (Services), Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

I declare under penalty of perjury that the foregoing is true and correct. Executed this 30th day of March, 2010, at Los Angeles, California.

Marc Toberoff, Esq,
Toberoff & Associates, P.C.
2049 Century Park East, Suite 2720
Los Angeles, CA  90067

Counsel for Raenee Robinson, Ray Charles
Robinson, Jr., Sheila Robinson, David
Robinson, Rev. Robert F. Robinson, Robyn
Moffett and Reatha Butler

11

Exhibit 3  Page 33