1 TOBEROFF & ASSOCIATES, P.C.
Marc Toberoff (State Bar No. 188547)
2   *mtoberoff@ipwla.com*
Keith G. Adams (State Bar No. 240497)
3   *kgadams@ipwla.com*
Pablo D. Arredondo (State Bar No. 241142)
4   *parredondo@ipwla.com*
David Harris (State Bar No. 255557)
5   *dharris@ipwla.com*
22337 Pacific Coast Highway #348
6 Malibu, California, 90265
Telephone:   (310) 246-3333
7 Facsimile:   (310) 246-3101

8 Attorneys for Defendants,
*Raenee Robinson, Ray Charles*
9 *Robinson, Jr., Sheila Robinson, David*
*Robinson, Robert F. Robinson, Reatha*
10 *Butler, and Robyn Moffett*

11 **UNITED STATES DISTRICT COURT**

12 **CENTRAL DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| 14 THE RAY CHARLES FOUNDATION, a California Corporation, | Case No: 12-CV-02725 ABC (FFMx) |
| 15 | Hon. Audrey B. Collins |
| 16 Plaintiff, | **DEFENDANTS' SUPPLEMENTAL BRIEF RE: DEFENDANTS'** |
| 17 vs. | **MOTION TO DISMISS PURSUANT TO THE COURT'S SEPTEMBER 25, 2012 ORDER** |
| 18 RAENEE ROBINSON, an individual; | |
| 19 RAY CHARLES ROBINSON, an individual; SHEILA ROBINSON, an | Complaint Filed:  March 29, 2012 |
| 20 individual; DAVID ROBINSON, an | |
| 21 individual; ROBERT F. ROBINSON, an individual; REATHA BUTLER, | |
| 22 an individual; and ROBYN | |
| 23 MOFFET, an individual, | |
| 24 Defendants. | |

25

26

27

28

DEFENDANTS' SUPPLEMENTAL BRIEF RE: DEFENDANTS' MOTION TO DISMISS

1

## **TABLE OF CONTENTS**

2  I.  INTRODUCTION ...................................................................................1

3  II.  PLAINTIFF LACKS STANDING TO PURSUE ITS
4      ALTERNATIVE THEORY .....................................................................3

5      A.  17 U.S.C. § 501(b) Does Not Confer Standing On
           Plaintiff...........................................................................................4

6          1.  The Language Of § 501(b) Does Not Confer
               Standing On "Beneficial Owners" Outside Of
7              Infringement Suits................................................................4

8          2.  Section 501(b) Does Not Broadly Abrogate The
               Prudential Standing Rules As To "Beneficial
9              Owners" .................................................................................7

10     B.  Plaintiff's Alleged Royalties Are Not Within The "Zone
           Of Interests" Protected By The Termination Provisions .................8
11

12 III.  PLAINTIFF CANNOT AMEND ITS COMPLAINT WITH
         INCONSISTENT FACTS .....................................................................11

13 IV.  ORAL ARGUMENT ............................................................................15

14 V.  CONCLUSION ....................................................................................15

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Alanis-Bustamante v. Reno*,
  201 F.3d 1303 (11th Cir. 2000) ...........................................................................5

*Albernaz v. U.S.*,
  450 U.S. 333 (1981) .............................................................................................7

*Alexander v. Sandoval*,
  532 U.S. 275 (2001) .............................................................................................4

*Andrus v. Glover Constr. Co.*,
  446 U.S. 608 (1980) .............................................................................................5

*Ashcroft v. Iqbal*,
  566 U.S. 662 (2009) ...........................................................................................13

*Association of Data Processing Serv. Organizations, Inc. v. Camp*,
  397 U.S. 150 (1970) .............................................................................................8

*Bennett v. Spear*,
  520 U.S. 154 (1997) ......................................................................................7, 8, 9

*Bourne Co. v. MPL Commc'ns, Inc.*,
675 F. Supp. 859 (S.D.N.Y. 1987) ........................................................................7

*Bread Political Action Comm. V. Fed. Election Comm'n*,
  455 U.S. 577 (1982) .............................................................................................5

*City of L.A. v. County of Kern*,
  581 F.3d 841 (9th Cir. 2009) ..........................................................................9, 10

*Devlin v. Scardelletti*,
  536 U.S. 1 (2002) ...............................................................................................10

*Entergy Corp. v. Riverkeeper, Inc.*,
  556 U.S. 208 (2009) .............................................................................................5

*Estate of McKinney v. United States*,
  71 F.3d 779 (9th Cir. 1995) .............................................................................9, 10

*FEC v. Akins*,
  524 U.S. 11 (1998) .............................................................................................10

*Hong Kong Supermarket v. Kizer*,
  830 F.2d 1078 (9th Cir. 1987) ..............................................................................9

*In re Bankr. Estate of Midland Euro Exch. Inc.*,
  347 B.R. 708 (Bankr. C.D. Cal. 2006) ..................................................................5

*Iglesias v. United States*,
  848 F.2d 362 (2d Cir. 1988) .................................................................................8

*Kingvision Pay-Per-View, Ltd. v. Manente*,
  2006 WL 120141 (E.D. Cal. Jan 12, 2006) .......................................................5

*Lacey v. Maricopa County*,
  2012 WL 3711591 (9th Cir. Aug. 29, 2012) ....................................................14

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................4

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008) ..........................................................................14

*Nat'l Credit Union Admin v. First Nat'l Bank and Trust Co.*,
  522 U.S. 479 (1998) ..........................................................................................10

*Powers v. Ohio*,
  499 U.S. 400 (1991) ........................................................................................3, 4

*Reddy v. Litton Indus., Inc.*,
  912 F.2d 291 (9th Cir. 1990) ............................................................................15

*Thinket Ink Info Res., Inc. v. Sun Microsystem, Inc.*,
  368 F.3d 1053 (9th Cir. 2004) ..........................................................................10

*United States v. Corinthian Colleges*,
  655 F.3d 984 (9th Cir. 2011) .......................................................................14, 15

*United States v. Jordan*,
  915 F.2d 622 (11th Cir. 1990) ............................................................................5

*W. Radio Services Co. v. U.S. Forest Serv.*,
  578 F.3d 1116 (9th Cir. 2009) ............................................................................4

*Williams v. United Airlines, Inc.*,
  500 F.3d 1019 (9th Cir. 2007) ............................................................................5

*Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*,
  550 U.S. 81 (2007) ..............................................................................................5

**Statutes/Regulations**

17 U.S.C. § 203(a) ...................................................................................*passim*

17 U.S.C. § 304(c) ...................................................................................*passim*

17 U.S.C. § 304(c)(6)(D) .................................................................................. 6

17 U.S.C. §501(b) ....................................................................................*passim*

37 C.F.R. § 201.10(f)(6) .............................................................................. 7, 8

**Secondary Sources**

3 M. Nimmer & D. Nimmer, *Nimmer on Copyright*
  § 11.08[A].........................................................................................................7

# I.    INTRODUCTION

As Defendants demonstrated in their Motion to Dismiss ("MTD"; Docket Nos. 16, 27), Plaintiff The Ray Charles Foundation does not have standing to bring its First Claim challenging Defendants' notices of termination of copyright grants ("Terminations"), because Plaintiff does not own the subject copyrights.

On September 24, 2012, this Court issued a Tentative Order ("Tentative") granting Defendants' motion as to Plaintiff's First Claim for lack of standing. At the hearing, Plaintiff argued that even if it did not have standing to challenge Defendants' Terminations on the theory that the musical compositions in question ("Songs") were non-terminable "works for hire," it could still pursue its First Claim on a theory, supposedly alleged in the Complaint (Docket No. 1), that the works were not "for hire."  According to Plaintiff, it has standing to proceed on this theory as a "beneficial owner" of the Songs' copyrights.

On September 25, 2012, the Court ordered supplemental briefing on two questions relating to this issue ("Order"; Docket No. 31):

(1)    Assuming that the works at issue were not works made for hire and the Foundation is a "beneficial owner" of the copyrights, does the Foundation have standing under the Copyright Act to challenge the termination notices under 304(c) and 203(a) as a "grantee" of an "exclusive or nonexclusive grant of a transfer or license" of any right under the copyrights?

(2)    Given the allegations in the current complaint, can the Foundation allege facts to support a claim that the works were not works made for hire consistent with Rule 11?

Plaintiff erroneously asserts that "the answer to both of these questions is yes." Docket No. 32 ("Supp.") 1.

Plaintiff's argument boils down to four false premises:  (i) that 17 U.S.C. § 501(b) confers standing on a "beneficial owner" to challenge third party

1

DEFENDANTS' SUPPLEMENTAL BRIEF RE: DEFENDANTS' MOTION TO DISMISS

copyright notices of termination; (ii) that § 501(b) somehow abrogates prudential standing requirements as to termination disputes; (iii) that, even if prudential standing requirements apply, Plaintiff meets those requirements because its contractual royalties fall within the "zone of interest" protected by the termination provisions, and (iv) that its Complaint supposedly already contains sufficient factual allegations that the Songs were not "made for hire."

Plaintiff is wrong on all counts.

*First*, 17 U.S.C. § 501(b) does not concern or confer standing on a "beneficial owner" to litigate termination disputes between other parties. Its plain language solely confers standing to a "beneficial owner" for copyright *infringement* claims, and nothing in the case law, statute or legislative history supports extending § 501(b) to other claims.

*Second*, and for similar reasons, § 501(b) does not generically abrogate prudential standing rules with respect to "beneficial owners." The statute does not expressly or impliedly negate the courts' usual standing rules, applicable to termination disputes, and there is no indication that this was Congress's intent.

*Third*, "beneficial owners" do not have standing under 17 U.S.C. §§ 203(a) and 304(c). These termination provisions unambiguously concern only the parties who own or seek to recover the copyrights in question – *i.e.,* the "grantee" (or its successor) of the subject copyright(s), and the author or his statutory heirs who may terminate a prior grant of copyright. The "zone of interest" of these statutory sections simply does not extend to parties with some contingent financial interest (*e.g.*, a royalty or profit participation).

*Fourth*, even if "beneficial owners" somehow had standing to challenge a termination notice, Plaintiff is precluded from claiming to be a "beneficial owner." Plaintiff's Complaint consistently alleges that the Songs were written as "works for hire," and the Ninth Circuit has held that the author of a "work for hire" is not a "beneficial owner." Plaintiff cannot now amend its Complaint

2
DEFENDANTS' SUPPLEMENTAL BRIEF RE: DEFENDANTS' MOTION TO DISMISS

1   with wholly inconsistent factual allegations that the Songs were *not* "made for

2   hire."

3          For these reasons and those in Defendants' Motion to Dimiss, Plaintiff's

4   First Claim should be dismissed for lack of standing without leave to amend.

5   **II.     PLAINTIFF LACKS STANDING TO PURSUE ITS**

6           **ALTERNATIVE THEORY**

7          As discussed at length in Defendants' previous briefing (Docket Nos. 16,

8   27), Plaintiff's First Claim asks this Court to declare that Defendants'

9   Terminations are invalid, and that Defendants therefore did not recover the

10  copyrights to their father's Songs.  Complaint ¶¶8, 41-47.  However, Plaintiff

11  admits, as it must, that it holds no current or future ownership interest in any of

12  the copyrights at issue.  Complaint ¶¶26, 28, 29, 39.  In seeking a declaration as

13  to the ownership, Plaintiff clearly does not assert its own legal rights and

14  interests, but those of a third party, Warner/Chappell Music, a grantee served

15  with Defendants' Termination.  MTD 7-8; Tentative 19; Order 2 ("[T]hat

16  [grantee] is still Warner/Chappell.").

17         Plaintiff's alleged status as a royalty recipient/"beneficial owner" (*i.e.*, a

18  party who does not hold legal title to a copyright) does not change this analysis

19  or give it standing under the Copyright Act.  Nothing in the Copyright Act's

20  provisions confers statutory standing on "beneficial owners" to challenge notices

21  of termination served on third parties or abrogates the well-accepted prudential

22  rules governing third party standing.

23         "Beneficial owner" or not, Plaintiff does not have third party standing to

24  assert the legal rights and interests of Warner/Chappell.  *See Powers v. Ohio*,

25  499 U.S. 400, 410-411 (1991) (third party standing requires a close relationship

26  with the third party and an inability of the third party to assert his own rights);

27  Tentative 19 (Plaintiff has "not shown that it has a close relationship with

28  Warner/Chappell or that Warner/Chappell cannot protect its own interests….").

3

DEFENDANTS' SUPPLEMENTAL BRIEF RE: DEFENDANTS' MOTION TO DISMISS

1 | Indeed, Plaintiff does not even argue that it does.

2 |     Instead, Plaintiff struggles to get around this "fundamental restriction" by

3 | trying to reposition itself as a first party asserting its own interests.  *Powers*, 499

4 | U.S. at 410.  To do so, Plaintiff engages in a barrage of unsupportable

5 | arguments, all of which can and should be rejected.  Plaintiff simply has not met

6 | its burden of establishing standing.  *Lujan v. Defenders of Wildlife*, 504 U.S.

7 | 555, 561 (1992).

8 |     **A.**    **<u>17 U.S.C. § 501(b) Does Not Confer Standing On Plaintiff</u>**

9 |     **1.**    **The Language Of § 501(b) Does Not Confer Standing On**

10 |     **"Beneficial Owners" Outside Of Infringement Suits**

11 |     Plaintiff initially attempts to circumvent the prudential limitations on third

12 | party standing by rewriting 17 U.S.C. § 501(b)'s unequivocal language.  By its

13 | express terms, § 501(b) confers statutory standing on "beneficial owners" to sue

14 | only for copyright infringement:  "The legal or beneficial owner of an exclusive

15 | right under a copyright is entitled … to bring an action for … *infringement*." *Id.*

16 | (emphasis added).  Its plain language does not suggest anything else.

17 |     Plaintiff attempts to avoid this clear language by arguing that the

18 | provision's "silence" as to third party notices of termination somehow supports

19 | its position.  Supp. 5-6.  According to Plaintiff, "Congress could have limited its

20 | expressed standing requirements under the Copyright Act when it came to

21 | challenging termination, but it chose not to."  Supp. 6.

22 |     This argument turns the standard canons of statutory construction (and

23 | common sense) on their head.  "Congress's silence … does not raise the

24 | inference that it intended to allow an implied right of action."  *W. Radio Services*

25 | *Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1125 (9th Cir. 2009); *see also*

26 | *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (holding that unless Congress

27 | plainly showed "an intent to create not just a private right but also a private

28 | remedy" then "a cause of action does not exist and courts may not create one");

DEFENDANTS' SUPPLEMENTAL BRIEF RE: DEFENDANTS' MOTION TO DISMISS

1 | *Williams v. United Airlines, Inc.*, 500 F.3d 1019, 1024 (9th Cir. 2007)

2 | ("[I]mplying a private right of action on the basis of congressional silence is a

3 | hazardous enterprise, at best.") (quotation omitted).

4 | "[H]ad Congress intended [to confer standing here] it could easily have

5 | achieved it by expressly granting standing." *Bread Political Action Comm. V.*

6 | *Fed. Election Comm'n*, 455 U.S. 577, 583-84 (1982) (refusing to "read an

7 | implicit grant of standing into congressional silence").

8 | Moreover, there is a key difference between Congressional silence in

9 | general and Congress's decision to limit an exception.  "Where Congress

10 | explicitly enumerates certain exceptions to a general prohibition, additional

11 | exceptions are not to be implied…."  *Andrus v. Glover Constr. Co.*, 446 U.S.

12 | 608, 616-17 (1980).  *See also United States v. Jordan*, 915 F.2d 622, 628 (11th

13 | Cir. 1990) ("Where Congress includes particular language in one section of a

14 | statute but omits it in another section of the same Act, it is generally presumed

15 | that Congress acts intentionally and purposefully in the disparate inclusion or

16 | exclusion.") (citation/quotation omitted); *In re Bankr. Estate of Midland Euro*

17 | *Exch. Inc.*, 347 B.R. 708, 720 (Bankr. C.D. Cal. 2006) (holding that "in light of

18 | … clearly worded … exception in [one subsection of statute] … the logical

19 | interpretation of congressional silence with respect to [a different sub-section]"

20 | is that exception did not apply).

21 | That Congress remained silent on termination/ownership disputes, while

22 | expressly conferring statutory standing in an infringement action, is "decisive."

23 | *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 239 (2009).  "Where Congress

24 | knows how to say something, but chooses not to, its silence is controlling."

25 | *Alanis-Bustamante v. Reno*, 201 F.3d 1303, 1311 (11th Cir. 2000); *see also*

26 | *Kingvision Pay-Per-View, Ltd. v. Manente*, 2006 WL 120141 (E.D. Cal. Jan 12,

27 | 2006) (same).

28 | Where, as here, "the intent of Congress is clear and unambiguously

5

DEFENDANTS' SUPPLEMENTAL BRIEF RE: DEFENDANTS' MOTION TO DISMISS

1  expressed by the statutory language at issue, that would be the end of our

2  analysis." *Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*, 550 U.S. 81, 93 (2007).

3  Nevertheless, a few points should be made as to Plaintiff's "extrinsic"

4  arguments.

5       *First*, there is no "textual and contextual evidence" (Supp. 6) to show that

6  Congress intended § 501(b) to confer standing on beneficial owners to challenge

7  third party termination notices.  The only thing Plaintiff actually points to is that

8  § 501(b) was enacted at the same time as its termination provisions, §§ 203(a),

9  304(c).  Supp. 6.  Given that the entire 1976 Copyright Act was enacted at the

10  same time, this is unsurprising and unpersuasive.

11       *Second*, despite Plaintiff's suggestion, there are in fact "logical or legal"

12  differences between infringement and termination suits.  Supp. 2.  Infringement

13  suits are about enjoining alleged infringers and recovering money damages.  The

14  interests of legal and "beneficial owners" in infringement suits will usually be

15  well aligned, and rarely, if ever, conflict, as both would want to enjoin the

16  infringement and recover damages.

17       In sharp contrast, termination disputes are over the future ***ownership*** of a

18  copyright – and "beneficial owners" have no claim to ownership.  The interests

19  of the legal and "beneficial owners" can readily conflict, as demonstrated by this

20  very case.  Tentative 19 (noting that "Warner/Chappell has not challenged the

21  validity of the termination notices").  A terminated grantee may well be more

22  interested in maintaining an amicable relationship with the terminating party to

23  facilitate re-licensing the copyrights at a fair price, rather than challenging a

24  valid statutory termination.  Indeed, the Copyright Act itself promotes this by

25  providing a terminated grantee with a competitive advantage in negotiating a

26  new license of the "terminated" copyrights.  *See* 17 U.S.C. § 304(c)(6)(D)

27  (establishing that between the service of a termination notice and its effective

28  date, terminated copyrights may only be transferred to the original grantee or its

6

DEFENDANTS' SUPPLEMENTAL BRIEF RE: DEFENDANTS' MOTION TO DISMISS

1    successors); *Bourne Co. v. MPL Commc'ns, Inc.*, 675 F. Supp. 859, 865

2    (S.D.N.Y. 1987) (noting that "[t]he provision does give the terminated grantee a

3    preferred competitive position"); 3 *Nimmer* § 11.08[A], n.6 (2010) (noting the

4    competitive "advantage" of the terminated grantee).  A "beneficial owner", on

5    the other hand, has no incentive to refrain from challenging a third party's

6    termination, as shown by Defendants' unbridled claims for declaratory relief and

7    purported breach of contract.

8             **2.        Section 501(b) Does Not Broadly Abrogate The**

9             **Prudential Standing Rules As To "Beneficial Owners"**

10           Plaintiff similarly attempts to rewrite § 501(b) with a muddled argument

11   that "by enacting a specific standing provision … Congress intended to negate"

12   the prudential standing rules in termination disputes.  Supp. 8-9.

13           Congress is "assume[d] [to] know the law."  *Albernaz v. U.S.*, 450 U.S.

14   333, 341-42 (1981).  It "legislates against the background of [the courts']

15   prudential standing [rules]."  *Bennett v. Spear*, 520 U.S. 154, 164.  As Plaintiff

16   inadvertently admits, all of the ordinary prudential standing rules apply unless

17   Congress "expressly negate[s]" them.  *Id.*; *see* Supp. 8.  Here, Congress did not

18   "expressly negate" anything as to lawsuits regarding statutory terminations.

19           This case is not, as Plaintiff wrongly contends (Supp. 8), analogous to

20   *Bennett,* where the Court held that a provision in an environmental statute that

21   broadly stated that "any person may commence a civil suit," superseded

22   prudential standing rules.  520 U.S. at 164.  Section 501(b) is decidedly

23   narrower in defining both who can bring a suit (*i.e.*, a "beneficial owner") and

24   the type of suit they can bring (*i.e.*, "an action for … infringement").

25           Plaintiff's reliance on the Copyright Office's regulation, 37 C.F.R. §

26   201.10(f)(6), is misplaced.  Supp. 9.  It merely states that "the recordation of a

27   notice of termination by the Copyright Office is without prejudice to any party

28   claiming that the legal and formal requirements for issuing a valid notice have

DEFENDANTS' SUPPLEMENTAL BRIEF RE: DEFENDANTS' MOTION TO DISMISS

1  not been met, including before a court of competent jurisdiction."  37 C.F.R. §

2  201.10(f)(6).  Such a regulation cannot dictate standing.  *Iglesias v. United*

3  *States*, 848 F.2d 362, 366 (2d Cir. 1988) ("A regulation … may not serve to

4  amend a statute.").  Nor is there any indication that the Copyright Office

5  intended this regulation to determine standing in termination cases; instead, the

6  statute merely leaves the resolution of termination disputes to the interested

7  parties and the Courts, rather than to the Copyright Office.  If read in the obtuse

8  manner Plaintiff suggests, the regulation's reference to "any party" would run

9  afoul of both Article III and prudential standing requirements.

10      Plaintiff's efforts to circumvent the prudential limitations on third party

11  standing by rewriting the unequivocal language of § 501(b) must be rejected.

12      **B.      Plaintiff's Alleged Royalties Are Not Within The "Zone of**

13      **Interests" Protected By The Termination Provisions**

14      Plaintiff next argues that even if § 501(b) does not confer statutory

15  standing or abrogate the prudential standing requirements here, Plaintiff may

16  still pursue its First Claim because its interest in "continu[ing] to receive

17  royalties" (Supp. 11) falls within the "zone of interests" to be protected by the

18  termination provisions, 17 U.S.C. §§ 203(a), 304(c).  Supp. 6-13.  Plaintiff's

19  lengthy discussion on this point is unpersuasive and largely a distraction.

20      *First*, the "zone of interest" inquiry asks "whether the interest sought to be

21  protected by complainant is arguably within the zone of interests to be protected

22  or regulated by the statute … in question."  *Association of Data Processing Serv.*

23  *Organizations, Inc. v. Camp,* 397 U.S. 150, 153 (1970).  "Whether a plaintiff's

24  interest is arguably ... protected ... by the statute ... is to be determined ... by

25  reference to the particular provision of law upon which the plaintiff relies."

26  *Bennett v. Spear*, 520 U.S. 154, 175-76 (1997) (quotations omitted).  "[T]he

27  plaintiff must establish that the injury he complains of ... falls within the 'zone

28  of interests' sought to be protected *by the statutory provision whose violation*

8

DEFENDANTS' SUPPLEMENTAL BRIEF RE: DEFENDANTS' MOTION TO DISMISS

1   *forms the legal basis for his complaint.*" *Id.* at 176 (emphasis in original)

2   (citations omitted).[1]

3        Importantly, "zone of interest" considerations are in addition to and do not

4   supplant third party standing requirements.  As the Ninth Circuit has explained,

5   the prudential limitations on standing require that the plaintiff *both* "assert his

6   own rights, rather than rely on the rights or interests of third parties" *and* "allege

7   an interest that is arguably within the zone of interests protected or regulated by

8   the statute or constitutional guarantee in question."  *Estate of McKinney v.*

9   *United States*, 71 F.3d 779, 782 (9th Cir. 1995); *Hong Kong Supermarket v.*

10  *Kizer*, 830 F.2d 1078, 1081 (9th Cir. 1987) (same).  "Failure to satisfy *any* of

11  these … prudential requirements defeats standing."  *Estate of McKinney*, 71 F.3d

12  at 782. (emphasis added).

13       *Second*, Plaintiff's "zone of interest" argument fails at the outset because

14  it mischaracterizes Plaintiff's Complaint.  While Plaintiff's First Claim may be

15  *motivated* by royalties, it does not seek to litigate that interest.  *See City of L.A.*

16  *v. County of Kern*, 581 F.3d 841, 846 (9th Cir. 2009) (explaining "the zone of

17  interests test turns on the interest sought to be protected, not the harm suffered

18  by the plaintiff").  It requests a declaration that Defendants' Terminations are

19  invalid and that "ownership [of the copyrights] should continue to rest with

20  Warner/Chappell Music."  Complaint ¶¶39, 43.  Plaintiff's First Claim is about

21  copyright ownership, not royalties.  While copyright ownership falls within the

22  "zone of interests" of the termination provisions, Plaintiff does not claim any

---

23  [1] "[T]he breadth of the zone of interests varies according to the provisions of law
24  at issue, so that what comes within the zone of interests of a statute for purposes
    of obtaining judicial review of administrative action under the 'generous review
25  provisions' of the APA may not do so for other purposes."  *Bennett*, 520 U.S. at
26  163.  By imputing the "not particularly demanding" requirements in APA cases
    (Supp. 8, 11, misciting and misquoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S.
27  388, 399 (1987)), Plaintiff ignores *Bennet*'s warning and narrow holding.
28  Indeed, the Supreme Court has expressly stated that it "requir[es] more from the
    would-be plaintiff" in private causes of actions.  *Clarke*, 479 U.S. at 400 n.16.

9

DEFENDANTS' SUPPLEMENTAL BRIEF RE: DEFENDANTS' MOTION TO DISMISS

1  ownership and instead impermissibly "rel[ies] on the rights or interests of third

2  parties" (*i.e.,* Warner/Chappell), "defeat[ing] standing" under the prudential

3  rules governing third party standing.  *Estate of McKinney*, 71 F.3d at 782.

4       *Third*, even if Plaintiff's First Claim was to enforce its royalty, that would

5  not fall within the "zone of interests" protected by the Copyright Act's

6  termination provisions.  Sections 203(a) and 304(c) concern two interests:  (1)

7  those of an author and/or his statutory heirs in recovering a previously granted

8  copyright(s), and (2) those of a grantee (or its successor's) in not losing such

9  copyright(s) to an improper termination.  Tentative 18 (identifying the interested

10 parties as authors/heirs and grantees).  The termination provisions do not

11 mention royalties, profit participations or any other such third party interests,

12 and none of their requirements or protections are aimed at such third parties.

13 Indeed, a "beneficial owner" is not even entitled to receive statutory notice of

14 termination.  The termination provisions concern authors, their statutory heirs,

15 grantees and copyright ownership, not "beneficial owners" and royalties.

16 Plaintiff's interest in "continu[ing] to receive royalties" (Supp. 11) is not even

17 "marginally related" to §§ 203(a) and 304(c).  *City of L.A.,* 581 F.3d at 847

18 (plaintiff is not within the "zone of interest" "if the plaintiff interests are …

19 marginally related to … the purposes" of the statute").[2]

20                           * * * * *

21

---

22 [2] The cases Plaintiff cites concern interests that were very clearly within the
"zone of interests" to be protected by the statute at issue.  *See, e.g.*, *Devlin v.*

23 *Scardelletti*, 536 U.S. 1, 7 (2002) (because petitioner was "a member of the class

24 bound by the judgment, there [was] no question that he satisfie[d]" the zone of
interests inquiry); *Thinket Ink Info Res., Inc. v. Sun Microsystem, Inc.*, 368 F.3d

25 1053, 1060 (9th Cir. 2004) ("allegations easily br[ought] the corporation within

26 the 'zone of interest' protected by" the statute); *Nat'l Credit Union Admin v.*
*First Nat'l Bank and Trust Co.*, 522 U.S. 479, 492 (1998) (the "link" between

27 the regulation and the interest at stake was "unmistakable"); *FEC v. Akins*, 524

28 U.S. 11, 20 (1998) (claim was the "kind that [statute] seeks to address").

DEFENDANTS' SUPPLEMENTAL BRIEF RE: DEFENDANTS' MOTION TO DISMISS

1    Plaintiff must meet the prudential rules of standing – including well-

2  settled third party standing requirements – but, as shown in Defendants' Motion

3  to Dismiss and this Court's Tentative, it cannot do so.  As Plaintiff has no

4  standing to bring its First Claim, it should be dismissed without leave to amend.

5  **III.   PLAINTIFF CANNOT AMEND ITS COMPLAINT WITH**

6  **INCONSISTENT FACTS**

7    Even if a "beneficial owner" could somehow get around the prudential

8  prohibition against third party standing, Plaintiff's First Claim would still not

9  survive because it:  (1) fails to allege any facts that the Songs were *not* "works

10  for hire," enabling Plaintiff to be a "beneficial owner," and (2) cannot now be

11  amended to include such contradictory facts.

12    Plaintiff argues that it need not amend its Complaint because "it has

13  already alleged the factual basis for its alternative theory," and "highlight[s]"

14  four facts supposedly found in its Complaint.  Supp. 13, 15.  To do this, Plaintiff

15  deconstructs its Complaint, rips sentence fragments out of context, inverts their

16  meaning, and then rebuilds them into an entirely new narrative that is the

17  *opposite* of what its Complaint actually alleges.  This is best illustrated by

18  comparing the four facts Plaintiff "highlight[s]" in its brief (Supp. 15) with the

19  actual Complaint paragraphs it cites – all of which expressly allege that Ray

20  Charles's work was "made for hire":

| No. | Plaintiff's Supplemental Brief | Plaintiff's Complaint |
|---|---|---|
| (1) | Ray Charles wrote the songs at issue in this case (Complaint ¶26). | At the same time that Ray Charles was under contract as a recording artist with Atlantic, **as an integral part of that employment relationship**, he was also engaged as a songwriter by Progressive Music Publishing Co., ("Progressive")…. As was customary in the music industry at the time, when an artist/songwriter, like Ray Charles, |

| | | | |
|---|---|---|---|
| | | | composed a musical composition that the artist/songwriter and the record company decided to record, a music publishing company that was owned by or affiliated with the record label would often own **(and in this instance, did own) the copyright** in the underlying musical composition.  In accordance with this industry-wide custom and practice, when Ray Charles and Atlantic decided to record a musical composition that Ray Charles had written, **Atlantic's affiliated music publishing company Progressive owned the copyright** in that musical composition.  As such, **said musical compositions were composed as an employee of Progressive** and thus are not subject to termination. (Complaint ¶26; emphasis added). |
| (2) | | Sometime after he wrote the songs he assigned his copyright in them to Progressive in so-called single songwriter agreements entitled "Standard Uniform Songwriters Contract" (the "Songwriters Contract") … (Complaint ¶27) | Sometimes**, without affecting the arrangement outlined in the preceding paragraph**, Progressive would **memorialize** its ownership in a musical composition written by Ray Charles, such as "I Got A Woman," in a so-called single songwriter agreement entitled "Standard Songwriters Contracts" (the "Songwriters Contract.") (Complaint ¶27; emphasis added). |
| (3) | | Under the terms of the Songwriters Contract for "I Got A Woman," Progressive was transferred the legal ownership of the copyright of the song.  According to the Songwriters Contract, in return for the assignment of copyright, Ray Charles received [various financial | Sometimes, **without affecting the arrangement outlined in the preceding paragraph**, Progressive would **memorialize** its ownership in a musical composition written by Ray Charles, such as "I Got A Woman," in a so-called single songwriter agreement entitled "Standard Uniform Songwriters Contract" (the "Songwriters |

DEFENDANTS' SUPPLEMENTAL BRIEF RE: DEFENDANTS' MOTION TO DISMISS

| | | | |
|---|---|---|---|
| 1 2 3 4 5 | | concessions]. (Complaint ¶27). | Contract"). Under the terms of the Songwriters Contract for "I Got A Woman," Progressive was deemed the owner of the copyright [sic] the song. According to the Songwriters Contract, Ray Charles received [various financial concessions]. (Complaint ¶27; emphasis added). |
| 6 7 8 9 10 11 12 13 14 15 16 17 18 | (4) | After Ray Charles composed a song, a registration would be filed with the Copyright Office indicating Ray Charles as the author *and copyright claimant*…. (Complaint ¶28). | After Ray Charles composed a song **under his employment agreement with Atlantic, Progressive would register the copyright in said song indicating itself as the owner in the registration filed with the Copyright Office**. This registration sometimes occurred several years after Ray Charles had delivered the song to Progressive and Atlantic **as a result of his employment obligations**. All the songs at issue in this action, regardless of their dates of copyright registration, **were written while Ray Charles was employed by Atlantic and Progressive**…. (Complaint ¶28; emphasis added). |

Moreover, at least one fact that Plaintiff claims supports its "alternative theory" – that "a registration would be filed with the Copyright Office indicating Ray Charles as the author and copyright claimant" – does not appear in the Complaint, and was only later argued in Plaintiff's Opposition. Supp. 15; Docket No. 19 at 2 n.1, 11 n.2. In effect, Plaintiff amends its Complaint to prove that it need not be amended.

In fact, Plaintiff's "alternative theory" is so non-existent in the Complaint that Defendants' Motion to Dismiss, Plaintiff's Opposition, Defendants' Reply, and the Court's Tentative all failed to even notice it. This is insufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 566 U.S. 662, 675 (2009) (court

13
DEFENDANTS' SUPPLEMENTAL BRIEF RE: DEFENDANTS' MOTION TO DISMISS

1   need not accept as true bare legal conclusions without supporting facts); Order 2.

2   It is also insufficient to survive Fed. R. Civ. P. 8(a), which requires that a

3   complaint "'give the defendant fair notice of what the … claim is and the

4   grounds upon which it rests.'"  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521

5   F.3d 1097, 1104 (9th Cir. 2008) (citations omitted).

6          To properly plead its alternative theory, Plaintiff would have to amend its

7   Complaint to make new factual allegations entirely inconsistent with its original

8   allegations, all of which were advanced to claim that the Songs were "works for

9   hire."  For example, whereas the initial Complaint alleges that the "musical

10  compositions were composed [by Ray Charles] as an employee of Progressive,"

11  the new Complaint would need to state the opposite.  Complaint ¶26.  Whereas

12  the initial Complaint alleges that the Songwriters Contract merely

13  "memorialize[d]" the publishing company's ownership of the Songs at

14  inception, the new Complaint would need to state that that the contracts were

15  affirmative copyright grants.  Complaint ¶27.  Whereas the initial Complaint

16  alleges that the Songs in question were registered in accordance with Ray

17  Charles's "employment agreement," the new Complaint would need to state that

18  there was no such agreement.  Complaint ¶28.  The list goes on.

19         Plaintiff, having failed to sufficiently plead its "alternative" theory that the

20  works were not "for hire," cannot now file an amended complaint that is

21  inconsistent with its original factual allegations, as this Court correctly

22  recognized.  *See* Tentative 20 (as plaintiff "cannot plead facts to contradict the

23  facts already pled in its complaint, any amendment would be futile"); *Lacey v.*

24  *Maricopa County*, 2012 WL 3711591 at *32 (9th Cir. Aug. 29, 2012) (facts

25  newly alleged in an amended complaint "must not be inconsistent with those

26  already alleged"); *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th

27  Cir. 2011) ("Leave to amend is [only] warranted if the deficiencies can be cured

28  with additional allegations that are consistent with the challenged pleading and

DEFENDANTS' SUPPLEMENTAL BRIEF RE: DEFENDANTS' MOTION TO DISMISS

1    that do not contradict the allegations in the original complaint.") (quotations

2    omitted); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) (an

3    "amended complaint may only allege other facts consistent with the challenged

4    pleading") (quotations omitted).

5           In its Supplemental Brief, Plaintiff dedicates an entire page to showing

6    that a *single* complaint need not be *internally* consistent.  Supp. 14.  However,

7    this misses the point – that new factual allegations in an amended complaint

8    must be consistent with the allegations in the original complaint.  Plaintiff's

9    original Complaint *is* internally consistent – it consistently alleges that the Songs

10   were purportedly "works for hire."  That is exactly why Plaintiff cannot now

11   amend its Complaint to support its alternative theory.

12          Plaintiff also argues that its new "version of the facts" is closer to

13   Defendants' factual position.  Supp. 16.  However, Defendants are not aware of

14   any authority (and Plaintiff does not cite any) which suggest that the above rules

15   of pleading change depending on how closely a plaintiff can retool its factual

16   allegations to track those of the defendants.

17          The Court should adopt its Tentative and dismiss Plaintiff's First Claim

18   for lack of standing without leave to amend.

19   **IV.    ORAL ARGUMENT**

20          Given that Defendants' Motion to Dismiss has been fully briefed, debated

21   during extensive oral argument, and now further explored in supplemental

22   briefing, Defendants believe that all of the relevant issues have been ventilated.

23   Defendants, however, have no objection to further oral argument if such is

24   deemed necessary or desirable.

25   **V.    CONCLUSION**

26          For all of the foregoing reasons, Defendants respectfully ask the Court to

27   grant Defendants' Motion to Dismiss Plaintiff's First Claim for lack of standing

28   and deny Plaintiff leave to amend.

15

DEFENDANTS' SUPPLEMENTAL BRIEF RE: DEFENDANTS' MOTION TO DISMISS

1

Dated: October 9, 2012          RESPECTFULLY SUBMITTED,

2

3                                          Marc Toberoff
                                           TOBEROFF & ASSOCIATES, P.C.

4
                                           Attorneys for Defendants,
5                                          Raenee Robinson, Ray Charles Robinson, Jr.,
                                           Sheila Robinson, David Robinson, Robert F.
6                                          Robinson, Reatha Butler, and Robyn Moffett

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' SUPPLEMENTAL BRIEF RE: DEFENDANTS' MOTION TO DISMISS